## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

BRYANT BROWN,
HRATCH YEREMIAN,                                     Case no.

    Plaintiffs,                                  Hon.

v.

MGM GRAND CASINO,

    Defendant.

---

Noah S. Hurwitz (P74063)
Grant M. Vlahopoulos (P85633)
Kara F. Krause (P85487)
HURWITZ LAW PLLC
Attorneys for Plaintiff
617 Detroit Street, Suite 125
Ann Arbor, MI 48103
(844) 487-9489
noah@hurwitzlaw.com
grant@hurwitzlaw.com
kara@hurwitzlaw.com

---

## COMPLAINT AND JURY DEMAND

NOW COME Plaintiffs Bryant Brown and Hratch Yeremian ("Plaintiffs"), by and through the undersigned attorneys, and state the following:

## INTRODUCTION

1.     MGM Grand Casino ("Defendant") deliberately flouted Title VII of the Civil Rights Act of 1964 ("Title VII"), Michigan's Elliott-Larsen Civil Rights Act ("ELCRA"), and the Americans with Disabilities Act of 1991 ("ADA") by blanketly

1

denying religious and medical exemptions from its mandatory COVID-19 policy based on a purported "undue hardship."  There was no basis for hardship, however, because Defendant allowed other employees, customers and vendors to enter premises without any vaccine requirement.

## **PARTIES, JURISDICTION, AND VENUE**

2.  Bryant Brown resides in Richmond, Michigan.

3.  Hratch Yeremian resides in Canton, Michigan.

4.  Defendant MGM Grand Casino is a domestic for-profit corporation.

5.  The Eastern District of Michigan has jurisdiction over the Title VII of the Civil Rights Act of 1964 ("Title VII") claims pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over the Elliott-Larsen Civil Rights Act ("ELCRA") claims pursuant to 28 U.S.C. § 1367.

6.  Venue is proper in the Eastern District of Michigan pursuant to 28 U.S.C. § 1391(b)(1) because it is the judicial district in which Defendant operates its businesses.

7.  Plaintiffs have received a Notice of Right to Sue from the U.S. Equal Employment Opportunity Commission ("EEOC") within the past 90 days.

## FACTUAL ALLEGATIONS

### Defendant's Mandatory Vaccine Policy

8.     On August 16, 2021, Defendant announced a COVID-19 vaccine policy for "all salaried employees and new hires."

9.     Defendant's Chief Executive Officer Bill Hornbuckle wrote:

> Throughout the pandemic, we've stressed that the health and safety of our employees and guests is our top priority. At the same time, we know that COVID-19 vaccines are the best way to protect people form this deadly virus and the variants, such as Delta, that have emerged. We've expended tremendous efforts to reduce barriers for vaccination and to provide a variety of incentives and support to get as many people vaccinated as possible. But more must now be done.

10.    Any employee who remained unvaccinated from COVID-19 by October 15, 2021 faced termination.

11.    Mr. Hornbuckle also stated, "I know that for some of you this may be an unwelcome development – a consideration that we do not take lightly when making this decision. However, as one of the largest and most trusted operators and employers in our industry, MGM Resorts is determined to do our part to curb the spread of the virus and help counter alarming trends in cases, hospitalizations and deaths."

12.     However, Mr. Hornbuckle's premise strains credulity because Defendant welcomes unvaccinated patrons onto premises and does not require vaccination by its union employees.

13.     Employees were already under pressure to be vaccinated prior to this announcement.

14.     Defendant incentivized employees to get vaccinated by offering pre-paid dinners, monetary compensation, and other gifts.

15.     Defendant implemented tactics to embarrass unvaccinated employees and separate them from their coworkers – they provided red heart stickers to be placed on the name tags of those who had submitted proof of vaccination.

**Plaintiff Yeremian's Religious Accommodation Request**

16.     On March 24, 2020, Defendant's President and Chief Operating Officer Davis Tsai granted Plaintiff Yeremian "Essential Employee Designation."

17.     Mr. Tsai wrote, "Despite the closure of our property and facilities to the general public, [Mr. Yeremian] is one of the comparatively small number of Company employees specifically designated to be necessary under paragraph 4(b) of the Governor's Executive Order 2020-21 in order for MGM Grand Detroit to conduct minimum basic operations, including but not limited to safeguarding the safety and well-being of the building, company assets, and other employees of the Company."

18.     Plaintiff Yeremian's value to Defendant is undisputed – his work was critical to maintain Defendant's minimum basic operations.

19.     On October 13, 2020, Mr. Tsai invited Plaintiff Yeremian to a "special 'Play Day,'" where he was asked to join other essential employees for a dinner at Defendant's newly opened D.PRIME Steakhouse as Mr. Tsai's personal guest.

20.     Mr. Tsai stated, "We could have never gotten to this point without our Essential Employees like you who helped keep our property safe, secure, and ready to reopen when the time came. I could not thank you enough for being willing to stay through our closure and supporting our team during the toughest times."

21.     On September 22, 2021, Plaintiff Yeremian submitted his answers to Defendant's "COVID-19 Religious Accommodation Request form."

22.     When asked to, "Please describe the conflict between such religious belief, practice, or observance and the provisions(s) of the COVID-19 vaccination program," Plaintiff Yeremian wrote: "The conflict is that all of the currently available COVID-19 vaccines used cell lines originated from aborted children in their manufacturing or testing."

23.     Plaintiff Yeremian also stated, "I believe that life begins at conception and ends at natural death, and I would be cooperating with and compliant in abortion if I was to receive the vaccine."

24.     When asked, "[w]ould receiving a COVID-19 vaccine interfere with our ability to practice your religion," Plaintiff Yeremian proclaimed, "Yes, I would be morally held accountable by God."

25.     On September 24, 2021, only two days after Plaintiff Yeremian submitted his accommodation request, he received a denial letter. The letter stated, in pertinent part:

> You are MGM Grand Detroit's Warehouse Manager. You are a leader to your team. Your position requires you to work on property and provide continuous oversight of numerous warehouse employees and the activities in the warehouse. You cannot perform all of these essential functions of your job position remotely. Nor are mitigation measures such as face masks and social distancing feasible…In such an environment, social distancing, face masks and other similar mitigation measures will not be effective and will interfere with your job duties because of your need to interact and communicate with multiple individuals in places where at times when masking and/or social distancing are not possible…
>
> …we have concluded that your continued presence on property, unvaccinated risks the risks the health and safety of guests, coworkers and yourself…Here, the risks and burdens your request for accommodation would impose on the Company are significant and cannot be resolved through mitigation measures. Granting your request would therefor constitute an undue  hardship on the Company, and we must deny your request for religious accommodation on that basis.

26.     This purported reasoning is pretextual.

27.     Accommodations for unvaccinated employees have been available since Plaintiff Yeremian worked as an Essential Employee.

28.     Defendant has feasible alternatives, including weekly testing, available.

29.     Defendant next stated, "[b]ased on the denial of your religious accommodation request, you will not be eligible for an exemption from the policy or from COVID-19 testing until such time that you are vaccinated."

30.     Upon information and belief, Defendant provides weekly testing for vaccinated individuals.

31.     However, Defendant refused to offer the same protective measure to unvaccinated employees, constraining their proffered argument for undue hardship.

32.     The denial letter concluded, "If you wish to remain employed with the Company after October 15, 2021, you must be fully vaccinated on or before October 15, 2021…If you do not comply with the Company's mandatory COVID-19 Vaccination Policy on or before October 15, 2021, your employment will be separated."

33.     "Forcing individuals to choose between their faith and their livelihood imposes an obvious and substantial burden on religion . . . vaccine mandates . . . presents a crisis of conscience for many people of faith.  It forces them to choose between the two most profound obligations they will ever assume—holding true to their religious commitments and feeding and housing their children.  To many, this

is the most horrifying of Hobson's choices." *Sambrano v. United Airlines, Inc.*, 19

F.4th 839, 841 (5th Cir. 2021).

34. Plaintiff Yeremian responded to Defendant's denial letter, stating, in

pertinent part:

> I am writing to express my concerns about MGM's COVID-19 vaccine mandate and the situation I currently find myself in. I submitted the requested religious accommodation documents to Corporate HR, but I have been declined the protection this exemption offers.
>
> Just recently, I discovered that all the available COVID-19 vaccines have been produced or validated with the aid of aborted fetal tissues...which goes against my religious conviction. Additionally, my faith also requires me to treat my body as a temple, and as such being coerced to inject a substance that hasn't yet undergone multi-year control group testing, represents a potential danger to my spiritual and emotional wellbeing. Together or apart, these are the reasons I am invoking the religious exemption and denying me the protection it affords would amount to an act of discrimination retaliation, especially considering the additional information provided below.
>
> I have subsequently been informed by email that MGM is going to terminate my employment because I do not wish to take the vaccine, despite invoking religious exemption as described above. Equally puzzling, this termination is set to take place even though I have been doing the same work, and taking the same risks, from the moment the Company designated me as an essential employee at the outset of the pandemic in March 2020, until the very present.
>
> Therefore, my question to you is, how is this termination not a violation of Federal or State Labor Laws?

35.     Defendant did not respond.

36.     On September 25, 2021, Plaintiff Yeremian sent Defendant a follow-up email, where he wrote:

> I firmly stand behind my religious belief which represents the reason I applied for the exemption. Based on my understanding, the COVID-19 vaccines contain aborted fetal tissue, which goes against my Catholic faith. Please supply me with a list of ingredients included in the FDA approved and labeled Comimaty [Pfizer-BioNtech] vaccine…
>
> I am disappointed that after 21 years of loyal service, that you're not working harder with me to resolve this issue.

37.     Defendant then responded, stating, "The Company's decision on your request is final…The Company simply has instituted a policy which mandates compliance with the COVID-19 Vaccination Policy for continued employment. You are free to make your own decisions, regardless of employment implications with the Company."

**Plaintiff Brown's Religious Accommodation Request**

38.     On October 1, 2021, Plaintiff Brown received a call from Human Resources to inquire about his vaccination status. He immediately informed the Human Resources employee that he suffers from sleep apnea and breathing conditions, which preclude him from getting vaccinated.

39.     Plaintiff Brown expressed to coworkers that getting vaccinated interferes with his sincerely held *bona fide* religious beliefs, but he felt like

submitting a religious accommodation request would be futile based on what he had heard from management.

40.     Plaintiff Brown then informed Defendant via email that he requested a medical accommodation to the Vaccine Program.

41.     Plaintiff Brown's conversation with Human Resources placed Defendant on notice to engage in the ADA's interactive process.

42.     "Under the ADA, an employer must engage in an 'informal, interactive process' with an employee to 'identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations…the interactive process in mandatory, and both parties have a duty to participate in good faith.'" *Brumley v. United Parcel Service, Inc*., 909 F.3d 834, 840 (6th Cir. 2018).

43.     "Examples of how a party may fail to engage in the process in good faith include causing unnecessary delays or obstructing the process, as well as failing to adequately communicate or provide information during the process." *Id*.

44.     Plaintiffs all worked safely and successfully for Defendant prior to the vaccine mandate." *Id.*, citing Kleiber v. Honda of America Mfg., 485 F.3d 863 (6th Cir. 2007).

45.     ADA regulations state that, "[t]o determine the appropriate reasonable accommodation [for an employee], it may be necessary for the [employer] to initiate an informal, interactive process with the [employee]." 29 C.R.F. § 1630.2(o)(3).

46.     Defendant's duty to participate in the interactive process in good faith is mandatory.

**Plaintiffs are Terminated in Retaliation for Submitting Exemption Requests**

47.     On October 18, 2021, Plaintiffs received identical letters merely stating, "The purpose of this letter is to inform you that your employment with MGM International Operations is terminated effective 10/16/21."

48.     Attached to the letter was a "Personnel Action Note," which detailed the "reasons" Defendant terminated employment.

49.     Defendant claimed Plaintiffs were terminated for "engaging in conduct that does not support the Company's goals and objectives" and "[d]isregard or violation of Company or department rules, procedures or policies. Specifically, you failed to comply with the Company's mandatory COVID-19 vaccination policy for salaried employees by October 15, 2021 after being instructed multiple times to do so."

50.     Plaintiffs were terminated under the coding for "insubordination," despite neither Plaintiff having engaged in any insubordinate activity.

51.     Plaintiff Yeremian had actually been the recipient of Manager of the Year previously with Defendant.

52.     Defendant also withheld paying Plaintiffs their annual bonuses for the 2021 fiscal year, which was about 5% of their salary.

53.     There are a host of reasonable accommodations that Defendant failed to consider.

54.     Plaintiffs could have tested daily to confirm whether they were not ill.

55.     Plaintiffs could have engaged in frequent sanitizing and disinfecting.

56.     Plaintiffs could have worn gloves and respirators in the workplace.

57.     Defendant made employees, including Plaintiff Yeremian, work in-person throughout the pandemic. Before any vaccine was developed, the following safety measures were deemed sufficiently effective to protect employees, patients, and their loved ones: daily testing, enhanced sanitation measures, including handwashing and disinfecting, gloves and respirators, and social distancing whenever practicable.

58.     Examples of reasonable accommodations include wearing a mask, working "at a social distance" from others, working a modified shift, getting tested, and being given the opportunity to telework. U.S. EQUAL EMPL. OPPORTUNITY COMM'N, *What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws* (May 28, 2021).

59.     "If the employer denies the employee's proposed accommodation, the employer should explain to the employee why the preferred accommodation is not being granted." *Id.*

60.     Defendant did not explain to Plaintiffs why accommodation could not be granted.

61.     Generally, the sincerity of an employee's religious beliefs "is not open to question." *United States v Seeger*, 380 U.S. 163, 185 (1965). Title VII's statutory definition of "religion" includes "all aspects of religious observance and practice, as well as belief." 42 U.S.C. § 2000e(j).

62.     Defendant's religious animus is further evidenced by the fact that, while it refuses to accommodate employees who reject the vaccine on religious grounds, it did not require independent contractors, vendors, or patrons to be vaccinated, even though they interact with Defendant's staff and providers.

63.     Defendant evaded any sort of "bilateral cooperation," *Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 69 (1986). "Bilateral cooperation is appropriate in the search for an acceptable reconciliation of the needs of the employee's religion and the exigencies of the employer's business." *Id.*

64.     Defendant's accommodation process was arbitrary.

65.     Defendant did not explore available reasonable accommodations from the vaccine.

**Defendant Cannot Establish Undue Hardship**

66.     The prohibition against religious discrimination imposes a "duty" on employers to accommodate sincere religious beliefs, absent "undue hardship." *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 74 (1977).

67.     The employer, not the employee, bears the burden of showing "that it is unable to reasonably accommodate the employee's religious beliefs without incurring undue hardship." *McDaniel v. Essex Intern., Inc*., 571 F.2d 338, 341 (6th Cir.1978).

68.     An employer does not satisfy its burden of proving undue hardship "merely by showing that an accommodation would be bothersome to administer or disruptive of the operating routine." *Draper v. United States Pipe & Foundry Co*., 527 F.2d 515, 520 (6th Cir.1975). The operative word is "undue," meaning that "something greater" than a mere hardship is required. *Id.*

69.     Defendant cannot satisfy its burden of proving undue hardship.

70.     Defendant's allegations are based in religious animus rather than science.

71.     Plaintiffs were not requesting a license to roam about uninhibited without sanitizing or wearing any personal protective equipment ("PPE"), as though no health threat existed.

72.     Plaintiffs were more than willing to comply with all safety protocols.

73.     Defendant's allegations of undue hardship lack scientific backing and, in fact, directly contravene scientific evidence supporting the effectiveness of practices such as handwashing and wearing respirators in preventing infection and death. Stella Talic et al., *Effectiveness of public health measures in reducing the incidence of covid-19, SARS-CoV-2 transmission, and covid-19 mortality: systematic review and meta-analysis*, BRIT. MED. J (2021).

74.     Defendant allowed Union employees to be unvaccinated.

75.     Defendant allowed its customers to be unvaccinated.

76.     Defendant allowed its vendors to be unvaccinated.

## COUNT I
## VIOLATION OF TITLE VII, 42 U.S.C. § 2000e, *et seq*.
## RELIGIOUS DISCRIMINATION–FAILURE TO ACCOMMODATE
## ON BEHALF OF PLAINTIFFS YEREMIAN AND BROWN

77.     Plaintiffs restate the foregoing paragraphs as set forth fully herein.

78.     Title VII prohibits an employer from discriminating against an employee "because of such individual's . . . religion." 42 U.S.C. § 2000e-2(a)(1). Title VII's definition of "religion" includes "all aspects of religious observance and practice, as well as belief." 42 U.S.C. § 2000e(j).

79.     Plaintiffs can establish *prima facie* cases of discrimination by showing (1) they hold sincere religious beliefs that conflict with an employment requirement; (2) they informed their employer of same; and (3) they were disciplined for failing

to comply with the employment requirement." *Yeager v. FirstEnergy Generation Corp*, 777 F.3d 362, 363 (6th Cir. 2015).

80.    Plaintiffs hold sincere religious beliefs that conflict with the vaccine mandate.

81.    Plaintiffs informed their employer of same.

82.    Plaintiffs were disciplined for failing to comply with the vaccine mandate.

83.    Defendant evaded any sort of "bilateral cooperation," *Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 69 (1986).  Defendant has thereby violated the law.

84.    Multiple reasonable accommodations could have been offered without undue hardship, including sanitizing, disinfecting, handwashing, respirator-wearing, and testing.

85.    Defendant never explained why they could not be accommodated.

86.    Defendant never explained why no accommodations could have worked.

87.    Plaintiffs have suffered emotional and physical distress, mental and physical anguish, loss of reputation, humiliation, embarrassment, and the physical effects associated therewith because of the denial of their requests, and they will so suffer in the future.

88.     Plaintiffs have been denied employment and placed in financial distress and they have suffered a loss of earnings and benefits, loss of health insurance coverage, and a loss of and impairment of their earning capacity and ability to work because of the denial of their requests.

89.     Plaintiffs have been required to employ the services of an attorney as a result.

90.     Defendant's actions were intentional and/or reckless.

## COUNT II
### VIOLATION OF TITLE VII, 42 U.S.C. § 2000e, *et seq*.
### RELIGIOUS DISCRIMINATION–RETALIATION
### ON BEHALF OF PLAINTIFFS YEREMIAN AND BROWN

91.     Plaintiffs restate the foregoing paragraphs as set forth fully herein.

92.     It is unlawful for an employer to retaliate against employees who communicate about employment discrimination or request accommodation for a religious practice.

93.     Plaintiffs engaged in protected activity when they requested accommodations.

94.     Defendant retaliated against them by terminating them on October 18, 2021.

95.     Plaintiffs have suffered emotional and physical distress, mental and physical anguish, loss of reputation, humiliation, embarrassment, and the physical

effects associated therewith because of the unlawful retaliatory conduct, and he will so suffer in the future.

96.     Plaintiffs have been denied employment and placed in financial distress and they has suffered a loss of earnings and benefits, and a loss of and impairment of their earning capacity and ability to work because of the retaliatory conduct, and they will so suffer in the future.

97.     Plaintiffs have been required to employ the services of an attorney as a result.

98.     Defendant's actions were intentional and/or reckless.

## COUNT III
## VIOLATION OF ELLIOTT-LARSEN CIVIL RIGHTS ACT ("ELCRA")
## RELIGIOUS DISCRIMINATION
## <u>ON BEHALF OF PLAINTIFFS YEREMIAN AND BROWN</u>

99.     Plaintiffs restate the foregoing paragraphs as set forth fully herein.

100.    Plaintiffs hold sincere religious beliefs that conflict with the vaccine mandate.

101.    Plaintiffs informed their employer of same.

102.    Plaintiffs were disciplined for failing to comply with the vaccine mandate.

103.    Defendant evaded any sort of "bilateral cooperation," *Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 69 (1986), when it granted a false

"accommodation" of an unpaid leave of absence, which is not an accommodation at all. Defendant therefore violated the law.

104.   Multiple reasonable accommodations could have been offered without undue hardship, including sanitizing, disinfecting, handwashing, respirator-wearing, and testing.

105.   Defendant never explained why they could not accommodate Plaintiffs.

106.   Defendant never explained why no accommodations could have worked.

107.   Plaintiffs have suffered emotional and physical distress, mental and physical anguish, loss of reputation, humiliation, embarrassment, and the physical effects associated therewith because of the denial of their requests, and they will so suffer in the future.

108.   Plaintiffs have been denied employment and placed in financial distress and they have suffered a loss of earnings and benefits, loss of health insurance coverage, and a loss of and impairment of their earning capacity and ability to work because of the denial of their requests.

109.   Plaintiffs have been required to employ the services of an attorney as a result.

110.   Defendant's actions were intentional and/or reckless.

**COUNT IV**
**VIOLATION OF ELLIOTT-LARSEN CIVIL RIGHTS ACT**
**RELIGIOUS DISCRIMINATION–RETALIATION**
**ON BEHALF OF PLAINTIFFS YEREMIAN AND BROWN**

111.   Plaintiffs restate the foregoing paragraphs as set forth fully herein.

112.   It is unlawful for an employer to retaliate against employees who communicate about employment discrimination or request accommodation for a religious practice.

113.   Plaintiff Yeremian engaged in protected activity when he a requested accommodation.

114.   Plaintiff Brown engaged in protected activity when he said that Defendant's policy conflicts with his sincerely held religious beliefs.

115.   Defendant retaliated against them by terminating them on October 18, 2021.

116.   Defendant's denial of accommodations and encouragement to receive the vaccination regardless of Plaintiff's religious beliefs was clearly intended to force employees to abandon their religious beliefs and receive the vaccine.

117.   Plaintiffs have suffered emotional and physical distress, mental and physical anguish, loss of reputation, humiliation, embarrassment, and the physical effects associated therewith because of the unlawful retaliatory conduct, and they will so suffer in the future.

118.   Plaintiffs have been denied employment and placed in financial distress and he has suffered a loss of earnings and benefits, and a loss of and impairment of their earning capacity and ability to work because of the retaliatory conduct, and they will so suffer in the future.

119.   Plaintiffs have been required to employ the services of an attorney a result.

120.   Defendant's actions were intentional and/or reckless.

**COUNT V**
**VIOLATION OF THE ADA, 42 U.S.C. § 12101, *et seq*.**
**DISABILITY DISCRIMINATION–FAILURE TO ACCOMMODATE**
**ON BEHALF OF PLAINTIFF BROWN**

121.   Plaintiff restates the foregoing paragraphs as if set forth fully herein.

122.   Defendant is an "employer" as a corporation engaged in an industry affecting commerce with fifteen (15) or more employees. 42 U.S.C. § 12111(5).

123.   Plaintiff was a "qualified individual." 42 U.S.C. § 12111(8).

124.   Defendant had a duty under to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability." 41 U.S.C. § 12112(b)(5)(a).

125.   Plaintiff requested accommodations for his specific disability.

126.   Defendant refused to engage in the interactive process.

127.   Plaintiff could have worn masks in the workplace.

128.   Plaintiff could have social distanced in the workplace.

129.   Plaintiff could have participated in temperature screening.

130.   Plaintiff could have tested periodically.

131.   Plaintiff could have engaged in frequent sanitizing and disinfecting.

132.   Plaintiff could have been reassigned.

133.   Defendant never explained why no accommodations could have worked.

134.   Defendant's actions were intentional and reckless.

135.   Plaintiff filed a charge with the U.S. Equal Employment Opportunity Commission ("EEOC") on May 13, 2022.

136.   Plaintiff has suffered mental and emotional distress, outrage, mental and physical anguish, loss of reputation, humiliation, embarrassment, indignity, and the physical effects associated therewith as a direct and proximate result.

137.   Plaintiff has been placed in financial distress and she has suffered a loss of earnings and benefits, loss of health insurance and a loss of and impairment of his earning capacity and ability to work as a direct and proximate result.

**COUNT VI**
**VIOLATION OF THE ADA, 42 U.S.C. § 1201, *et seq*.**
**RETALIATION**
**ON BEHALF OF PLAINTIFF BROWN**

138.   Plaintiff restates the foregoing paragraphs as if set forth fully herein.

139.   Defendant is an "employer" as a corporation engaged in an industry affecting commerce with fifteen (15) or more employees. 42 U.S.C. § 12111(5).

140.   Plaintiff was a "qualified individual." 42 U.S.C. § 12111(8).

141.   Plaintiff engaged in protected activity when he requested a medical accommodation.

142.   Defendant denied Plaintiff's accommodation request.

143.   Plaintiff has suffered mental and emotional distress, outrage, mental and physical anguish, loss of reputation, humiliation, embarrassment, indignity, and the physical effects associated therewith as a direct and proximate result.

144.   Plaintiff has been placed in financial distress and they have suffered a loss of earnings and benefits, loss of health insurance and a loss of and impairment of his earning capacity and ability to work as a direct and proximate result.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs request the following relief:

a.      Compensatory damages for monetary and non-monetary loss;

b.      Exemplary and punitive damages;

c.      Prejudgment interest;

d.      Reasonable attorney's fees; and

e.      Such other relief as in law or equity may pertain.

Respectfully Submitted,
HURWITZ LAW, PLLC

*/s/ Noah S. Hurwitz*
Noah Hurwitz (P74063)
Attorney for Plaintiff

23

617 Detroit Street, Suite 125
Ann Arbor, MI 48103
(844) 487-9489
Dated: December 8, 2022          noah@hurwitzlaw.com

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

BRYANT BROWN,
HRATCH YEREMIAN,                                        Case No.

    Plaintiffs,                                    Hon.

v.

MGM GRAND CASINO,

    Defendant.

---

Noah S. Hurwitz (P74063)
Grant M. Vlahopoulos (P85633)
Kara F. Krause (P85487)
HURWITZ LAW PLLC
Attorneys for Plaintiff
617 Detroit Street, Suite 125
Ann Arbor, MI 48103
(844) 487-9489
noah@hurwitzlaw.com
grant@hurwitzlaw.com
kara@hurwitzlaw.com

---

## DEMAND FOR TRIAL BY JURY

Plaintiffs Bryant Brown and Hratch Yeremian ("Plaintiffs"), by and through their attorneys Hurwitz Law, PLLC, hereby demand a trial by jury, for all issues so triable.

                            Respectfully Submitted,
                            HURWITZ LAW, PLLC
                            */s/ Noah S. Hurwitz*
                            Noah Hurwitz (P74063)

Attorney for Plaintiff

Dated: December 8, 2022