# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

BRYANT BROWN,
HRATCH YEREMIAN,

        Plaintiffs,                             Case No. 2:22-CV-12978

v.                                           Hon. Victoria A. Roberts

MGM GRAND CASINO,

        Defendant.

---

| | |
|---|---|
| Noah S. Hurwitz (P74063) | Allan S. Rubin (P44420) |
| Grant M. Vlahopoulos (P85633) | JACKSON LEWIS P.C. |
| Kara F. Krause (P85487) | Attorneys for Defendant |
| HURWITZ LAW PLLC | 2000 Town Center, Ste. 1650 |
| *Attorneys for Plaintiff* | Southfield, MI 48075 |
| 340 Beakes St., Suite 125 | (248) 936-1900 |
| Ann Arbor, MI 48104 | allan.rubin@jacksonlewis.com |
| (844) 487-9489 | |
| Noah@hurwitzlaw.com | |
| Grant@hurwitzlaw.com | |
| Kara@hurwitzlaw.com | |

---

## **PLAINTIFFS' SECOND AMENDED COMPLAINT AND JURY DEMAND**

NOW COME Plaintiffs, Bryant Brown and Hratch Yeremian ("Plaintiffs"), by and through their attorneys, Hurwitz Law PLLC, and hereby state the following for their Second Amended Complaint against Defendant MGM Grand Casino ("Defendant"):

## INTRODUCTION

1.     Defendant MGM Grand Casino ("Defendant") deliberately flouted Title VII of the Civil Rights Act of 1964 ("Title VII"), Michigan's Elliot-Larsen Civil Rights Act ("ELCRA"), and the Americans with Disabilities Act of 1991 ("ADA") when it blanketly denied Plaintiffs' religious and medical accommodation requests from its mandatory COVID-19 vaccine mandate based on a purported "undue hardship."  Defendant had no basis to claim "undue hardship," however, because Defendant allowed other employees, customers, and vendors to enter its premises without any vaccination requirement.

## PARTIES, JURISDICTION, AND VENUE

2.     Bryant Brown is an individual residing in Richmond, Michigan.

3.     Hratch Yeremian is an individual residing in Canton, Michigan.

4.     Defendant MGM Casino is a domestic for-profit corporation.

5.     The Eastern District of Michigan has jurisdiction over Plaintiffs' Title VII claims pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1343(a)(4) (jurisdiction over civil rights claims).

6.     The Eastern District of Michigan has federal question jurisdiction over Plaintiff Brown's ADA claims pursuant to 28 U.S.C. § 1331.

7.     The Eastern District of Michigan has supplemental jurisdiction over Plaintiffs' ELCRA claims pursuant to 28 U.S.C. § 1367.

8.     Venue is proper in the Eastern District of Michigan pursuant to 42 U.S.C. § 2000e-5(f)(3) because this is the District in which the aggrieved Plaintiffs would have worked but for Defendant's unlawful employment practice.

9.     Plaintiffs received a Notice of Right to Sue from the U.S. Equal Employment Opportunity Commission ("EEOC") within 90 days of filing their original Complaint.

## FACTUAL ALLEGATIONS

### Defendant's Mandatory COVID-19 Vaccine Policy

10.     On or about August 16, 2021, Defendant announced its COVID-19 vaccine policy for "all salaried employees and new hires."

11.     Defendant's Chief Executive Officer Bill Hornbuckle wrote:

> Throughout the pandemic, we've stressed that the health and safety of our employees and guests is our top priority. At the same time, we know that COVID-19 vaccines are the best way to protect people from this deadly virus and the variants, such as Delta, that have emerged. We've expended tremendous efforts to reduce barriers for vaccination and to provide a variety of incentives and support to get as many people vaccinated as possible. But more must now be done.

12.     Any employee who remained unvaccinated against COVID-19 by October 15, 2021 faced termination.

13.     Mr. Hornbuckle also stated "I know that for some of you this may be an unwelcome development – a consideration that we do not take lightly when

3

making this decision.  However, as one of the largest and most trusted operators and employers in our industry, MGM Resorts is determined to do our part to curb the spread of the virus and help counter alarming trends in cases, hospitalizations, and deaths."

14.    Mr. Hornbuckle's premise strains credulity because Defendant welcomes unvaccinated patrons onto its premises and does not require vaccination by its union employees.

15.    Even prior to Mr. Hornbuckle's statement, Defendant pressured its employees to get vaccinated against COVID-19.

16.    In fact, Defendant incentivized employees to get vaccinated against COVID-19 by offering pre-paid dinners, monetary compensation, and other gifts.

17.    Defendant also implemented tactics to embarrass unvaccinated employees and separate them from their coworkers.

18.    For example, Defendant provided vaccinated employees red heart stickers to be placed on their name tags.

**Plaintiff Yeremian's Religious Accommodation Request**

19.    On or about March 24, 2020, Defendant's President and Chief Operating Officer Davis Tsai granted Plaintiff Yeremian "Essential Employee Designation."

4

20.    Mr. Tsai wrote "[d]espite the closure of our property and facilities to the general public, [Mr. Yeremian] is one of the comparatively small number of Company employees specifically designated to be necessary under paragraph 4(b) of the Governor's Executive Order 2020-21 in order for MGM Grant Detroit to conduct minimum basic operations, including but not limited to safeguarding the safety and well-being of the building, company assets, and other employees of the Company."

21.    Plaintiff Yeremian's value to Defendant is undisputed—his work was critical to maintaining Defendant's minimum basic operations during the COVID-19 pandemic.

22.    On or about October 13, 2020, Mr. Tsai invited Plaintiff Yeremian to a "special 'Play Day,'" where Mr. Yeremian was asked to join other essential employees for a dinner at Defendant's newly opened D.PRIME Steakhouse as Mr. Tsai's personal guest.

23.    Mr. Tsai stated, "we could have never gotten to this point without our essential employees like you who helped keep our property safe, secure, and ready to reopen when the time came.  I could not thank you enough for being willing to stay through our closure and supporting our team during the toughest times."

24.    On or about September 22, 2021, Plaintiff Yeremian submitted his religious accommodation request by submitting his answers to Defendant's "COVID-19 Religious Accommodation Request Form."

25.    When asked to "describe the conflict between such religious belief, practice, or observance and the provision(s) of the COVID-19 vaccination program," Plaintiff Yeremian wrote "[t]he conflict is that all of the currently available COVID-19 vaccines used cell lines originated from aborted children in their manufacturing or testing."

26.    Plaintiff Yeremian also stated "I believe that life begins at conception and ends at natural death, and I would be cooperating with and compliant in abortion if I was to receive the vaccine."

27.    When asked "[w]ould receiving a COVID-19 vaccine interfere with your ability to practice your religion," Plaintiff Yeremian proclaimed "Yes, I would be morally held accountable by God."

28.    On or about September 24, 2021, just two days after Plaintiff Yeremian submitted his religious accommodation request, he received a denial letter.

29.    The denial letter stated in pertinent part:

> You are MGM Grand Detroit's Warehouse Manager. You are a leader to your team. Your position requires you to work on property and provide continuous oversight of numerous warehouse employees and the activities in the warehouse. You cannot perform all of these essential functions of your job position remotely. Nor are mitigation

measures such as face masks and social distancing
feasible… In such an environment, social distancing, face
masks and other similar mitigation measures will not be
effective and will interfere with your job duties because of
your need to interact and communicate with multiple
individuals in places where and at times when masking
and/or social distancing are not possible[.]

\*\*\*

[W]e have concluded that your continued presence on
property, unvaccinated risks the health and safety of
guests, coworkers and yourself… Here, the risks and
burdens your request for accommodation would impose on
the Company are significant and cannot be resolved
through mitigation measures. Granting your request would
therefor constitute an undue  hardship on the Company,
and we must deny your request for religious
accommodation on that basis.

30.     Defendant's purported reasoning is pretextual.

31.     Accommodations for unvaccinated employees were available since

Plaintiff Yeremian worked as an Essential Employee.

32.     Defendant had feasible alternatives, including weekly testing,

available.

33.     Defendant's denial letter to Plaintiff Yeremian also stated "based on the

denial of your religious accommodation request, you will not be eligible for an

exemption from the policy or from COVID-19 testing until such time that you are

vaccinated."

34.     Upon information and belief, Defendant provided weekly testing for

vaccinated individuals.

35.    However, Defendant refused to offer the same protective measure to unvaccinated employees, constraining the proffered undue hardship argument.

36.    The denial letter to Plaintiff Yeremian concluded "[i]f you wish to remain employed with the Company after October 15, 2021, you must be fully vaccinated on or before October 15, 2021 . . . If you do not comply with the Company's mandatory COVID-19 Vaccination Policy on or before October 15, 2021, your employment will be separated."

37.    "Forcing individuals to choose between their faith and their livelihood imposes an obvious and substantial burden on religion . . . vaccine mandates . . . present[] a crisis of conscience for many people of faith.  It forces them to choose between the two most profound obligations they will ever assume—holding true to their religious commitments and feeding and housing their children.  To many, this is the most horrifying of Hobson's choices."  *Sambrano v. United Airlines Inc.*, 19 F.4th 839, 841 (5th Cir. 2021).

38.    Plaintiff Yeremian responded to Defendant's denial letter, stating in part:

> I am writing to express my concerns about MGM's COVID-19 vaccine mandate and the situation I currently find myself in. I submitted the requested religious accommodation documents to Corporate HR, but I have been declined the protection this exemption offers.
>
> Just recently, I discovered that all the available COVID-19 vaccines have been produced or validated with the aid

of aborted fetal tissues…which goes against my religious conviction.  Additionally, my faith also requires me to treat my body as a temple, and as such being coerced to inject a substance that hasn't yet undergone multi-year control group testing, represents a potential danger to my spiritual and emotional wellbeing.  Together or apart, these are the reasons I am invoking the religious exemption and denying me the protection it affords would amount to an act of discrimination retaliation, especially considering the additional information provided below.

I have subsequently been informed by email that MGM is going to terminate my employment because I do not wish to take the vaccine, despite invoking religious exemption as described above.  Equally puzzling, this termination is set to take place even though I have been doing the same work, and taking the same risks, from the moment the Company designated me as an essential employee at the outset of the pandemic in March 2020, until the very present.

Therefore, my question to you is, how is this termination not a violation of Federal or State Labor Laws?

39.   Defendant did not respond to Plaintiff Yeremian's correspondence.

40.   On or about September 25, 2021, Plaintiff Yeremian sent Defendant a follow-up email, stating:

I firmly stand behind my religious belief which represents the reason I applied for the exemption.  Based on my understanding, the COVID-19 vaccines contain aborted fetal tissue, which goes against my Catholic faith.  Please supply me with a list of ingredients included in the FDA approved and labeled Comirnaty [Pfizer-BioNtech] vaccine…

I am disappointed that after 21 years of loyal service, that you're not working harder with me to resolve this issue.

9

41.     Defendant responded to Plaintiff Yeremian's September 25, 2021 follow-up email by stating "[t]he Company's decision on your request is final . . . The Company simply has instituted a policy which mandates compliance with the COVID-19 Vaccination Policy for continued employment.  You are free to make your own decisions, regardless of employment implications with the Company."

**Plaintiff Brown's Accommodation Request(s)**

42.     On or about October 1, 2021, Plaintiff Brown received a call from Human Resources to inquire about his vaccination status.  He immediately informed the Human Resources employee that he suffers from sleep apnea and breathing conditions, which preclude him from getting vaccinated.

43.     During the call, Plaintiff Brown also expressed that getting vaccinated interferes with his sincerely held *bona fide* religious beliefs.

44.     Plaintiff Brown later affirmed in writing via email that his religious views prevented him from receiving the COVID-19 vaccine.  Plaintiff Brown no longer has access to this email.

45.     Specifically, Plaintiff Brown informed Defendant that he is entitled to choose what he puts in his body because his body is a temple.

46.     Plaintiff Brown also informed Defendant via email that he requested a medical accommodation to Defendant's vaccine mandate.

47.     Plaintiff Brown's conversations with Defendant's Human Resources department placed Defendant on notice to engage in the interactive process as required by the ADA.

48.     "Under the ADA, an employer must engage in an 'informal, interactive process' with an employee to 'identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations . . . the interactive process is mandatory, and both parties have a duty to participate in good faith." *Brumley v. United Parcel Serv., Inc.*, 909 F.3d 834, 840 (6th Cir. 2018).

49.     "Examples of how a party may fail to engage in the process in good faith include causing unnecessary delays or obstructing the process, as well as failing to adequately communicate or provide information during the process." *Id.*

50.     Plaintiff worked safely and successfully for Defendant prior to Defendant's implementation of its COVID-19 vaccine mandate. *See Id.* (citing *Kleiber v. Honda of Am.Mfg. Inc.*, 485 F.3d 862 (6th Cir. 2007).

51.     ADA regulations state that "[t]o determine the appropriate reasonable accommodation [for an employee], it may be necessary for the [employer] to initiate an informal, interactive process with the [employee]." 29 C.F.R. § 1630.2(o)(3).

52.     Defendant's duty to participate in the interactive process in good faith is therefore mandatory.

**Plaintiffs' Terminations**

53.   On or about October 18, 2021, Plaintiffs received identical letters stating "[t]he purpose of this letter is to inform you that your employment with MGM Internal Operations is terminated effective 10/16/21."

54.   Attached to Plaintiffs' letters was a "Personnel Action Note."

55.   The Personnel Action Note explained the proffered "reasons" Defendant terminated Plaintiffs.

56.   Defendant claimed that Plaintiffs were terminated for "engaging in conduct that does not support the Company's goals and objectives" and "disregard or violation of Company or department rules, procedures, or policies.  Specifically, you failed to comply with the Company's mandatory COVID-19 vaccination policy for salaried employees by October 15, 2021 after being instructed multiple times to do so."

57.   Plaintiffs were terminated under the coding for "insubordination," despite neither Plaintiff having engaged in any insubordinate activity.

58.   Notably, Plaintiff Yeremian had previously received Defendant's Manager of the Year award.

59.   Defendant also withheld paying Plaintiffs their annual bonuses for the 2021 fiscal year, which constituted about 5% of their salary.

60.     There are a host of reasonable accommodations Defendant failed to consider.

61.     Plaintiffs could have tested regularly (even daily) to confirm whether they were negative for COVID-19.

62.     Plaintiffs could have engaged in frequent sanitizing and disinfecting.

63.     Plaintiffs could have worn gloves and respirators in the workplace.

64.     Defendant made employees, including Plaintiff Yeremian, work in-person throughout the pandemic.

65.     Before any COVID-19 vaccine was developed, the following safety measures were deemed sufficiently effective to protect employees, patients, and their loved ones: daily testing, enhanced sanitation measures such as handwashing and disinfecting, gloves and respirators, and social distancing whenever practicable.

66.     Examples of reasonable accommodations include wearing a mask, working "at a social distance" from others, working a modified shift, getting tested, and being given the opportunity to telework.  U.S. EQUAL EMPL. OPPORTUNITY COMM'N, *What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws* (May 28, 2021).

67.     "If the employer denies the employee's proposed accommodation, the employer should explain to the employee why the preferred accommodation is not being granted."  *Id.*

68.     Defendant did not explain to Plaintiffs why no accommodations could be granted.

69.     Generally, the sincerity of an employee's religious beliefs "is not open to question." *United States v Seeger*, 380 U.S. 163, 185 (1965).  Title VII's statutory definition of "religion" includes "all aspects of religious observance and practice, as well as belief."  42 U.S.C. § 2000e(j).

70.     Defendant's religious animus is further evidenced by the fact that, while it refuses to accommodate employees who object to the COVID-19 vaccines on religious grounds, it did not require independent contractors, vendors, or patrons to be vaccinated, even though they interact with Defendant's staff and providers.

71.     Defendant evaded any sort of "bilateral cooperation," *Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 69 (1986).

72.     "Bilateral cooperation is appropriate in the search for an acceptable reconciliation of the needs of the employee's religion and the exigencies of the employer's business." *Id.*

73.     Defendant's accommodation process was arbitrary.

74.     Defendant did not explore the available reasonable accommodations to its COVID-19 vaccine mandate.

**Defendant Cannot Establish Undue Hardship**

75.     The prohibition against religious discrimination imposes a "duty" on employers to accommodate sincere religious beliefs, absent "undue hardship." *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 74 (1977).

76.     The employer, not the employee, bears the burden of showing "that it is unable to reasonably accommodate the employee's religious beliefs without incurring undue hardship." *McDaniel v. Essex Int'n., Inc.*, 571 F.2d 338, 341 (6th Cir. 1978).

77.     An employer does not satisfy its burden of proving undue hardship "merely by showing that an accommodation would be bothersome to administer or disruptive of the operating routine." *Draper v. United States Pipe & Foundry Co.*, 527 F.2d 515, 520 (6th Cir.1975). The operative word is "undue," meaning that "something greater" than a mere hardship is required. *Id.*

78.     Defendant cannot satisfy its burden of proving undue hardship.

79.     Defendant's allegations are based in religious animus rather than science.

80.     Plaintiffs were not requesting a license to roam about uninhibited without sanitizing or wearing any personal protective equipment ("PPE"), as though no health threat existed.

81.     Plaintiffs were more than willing to comply with all safety protocols.

82.    Defendant's allegations of undue hardship lack scientific backing and, in fact, directly contravene scientific evidence supporting the effectiveness of practices such as handwashing and wearing respirators in preventing infection and death. Stella Talic et al., *Effectiveness of public health measures in reducing the incidence of covid-19, SARS-CoV-2 transmission, and covid-19 mortality: systematic review and meta-analysis*, BRIT. MED. J (2021).

83.    Defendant allowed Union employees to be unvaccinated.

84.    Defendant allowed its customers to be unvaccinated.

85.    Defendant allowed its vendors to be unvaccinated.

## COUNT I
## VIOLATION OF TITLE VII, 42 U.S.C. § 2000e, *et seq.*
## RELIGIOUS DISCRIMINATION - FAILURE TO ACCOMMODATE
## ON BEHALF OF PLAINTIFFS YEREMIAN AND BROWN

86.    Plaintiffs restate the foregoing paragraphs as set forth fully herein.

87.    Title VII prohibits an employer from discriminating against an employee "because of such individual's . . . religion."  42 U.S.C. § 2000e-2(a)(1).

88.    Title VII's definition of "religion" includes "all aspects of religious observance and practice, as well as belief."  42 U.S.C. § 2000e(j).

89.    Plaintiffs can establish *prima facie* cases of discrimination by showing (1) they hold sincere religious beliefs that conflict with an employment requirement; (2) they informed their employer of the same; and (3) they were disciplined for

failing to comply with the employment requirement." *Yeager v. FirstEnergy Generation Corp.*, 777 F.3d 362, 363 (6th Cir. 2015).

90.     Plaintiffs hold sincere religious beliefs that conflict with Defendant's COVID-19 vaccine mandate.

91.     Plaintiffs informed their employer that their sincere religious beliefs conflict with Defendant's COVID-19 vaccine mandate.

92.     Plaintiffs were disciplined for refusing to abandon their sincerely held religious beliefs and receive the COVID-19 vaccine.

93.     Defendant evaded any sort of "bilateral cooperation." *Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 69 (1986).  Defendant thereby violated the law.

94.     Multiple reasonable accommodations could have been offered to Plaintiffs without undue hardship, including sanitizing, disinfecting, handwashing, respirator-wearing, and testing.

95.     Defendant did not adequately explain to Plaintiffs why their religious beliefs could not be accommodated.

96.     Defendant never explained to Plaintiffs why no accommodations could have worked.

97.     Plaintiffs have suffered emotional and physical distress, mental and physical anguish, loss of reputation, humiliation, embarrassment, and the physical

effects associated therewith because of the denial of their requests, and they will so suffer in the future.

98.    Plaintiffs have been denied employment and placed in financial distress and they have suffered a loss of earnings and benefits, loss of health insurance coverage, and a loss of and impairment of their earning capacity and ability to work because of the denial of their requests.

99.    Plaintiffs have been required to employ the services of an attorney as a result.

100.    Defendant's actions were intentional and/or reckless.

**COUNT II**
**VIOLATION OF TITLE VII, 42 U.S.C. § 2000e, *et seq.***
**DISPARATE TREATMENT DISCRIMINATION**
**ON BEHALF OF PLAINTIFFS YEREMIAN AND BROWN**

101.    Plaintiffs restate the foregoing paragraphs as set forth fully herein.

102.    "To assert a successful claim of religious discrimination . . . a plaintiff must either present direct evidence of discrimination, or, in the absence of direct evidence, present a prima facie case of indirect discrimination by showing (1) they were a member of a protected class, (2) they experienced an adverse employment action (3) they were qualified for the position, and (4) they were replaced by a person outside of the protected class or were treated differently than similarly situated employees." *Tepper v. Potter*, 505 F.3d 508, 515 (6th Cir. 2007).

103.   Plaintiffs espoused to Defendant their sincere religious beliefs and are therefore members of a protected class.

104.   Defendant directly discriminated against Plaintiffs by terminating them after they stated how their sincerely held religious beliefs conflicted with Defendant's COVID-19 vaccine mandate.

105.   It is undisputed that Plaintiffs were qualified for their positions.

106.   Plaintiffs were treated differently than similarly situated employees with different religious beliefs who were allowed to continue working despite not being vaccinated against COVID-19.

107.   Plaintiffs were terminated and replaced with employees of different religious beliefs.

108.   Plaintiffs suffered emotional and physical distress, mental and physical anguish, loss of reputation, humiliation, embarrassment, and the physical effects associated therewith because of the denial of their requests, and will so suffer in the future.

## COUNT III
## VIOLATION OF ELLIOT-LARSEN CIVIL RIGHTS ACT ("ELCRA")
## RELIGIOUS DISCRIMINATION – DISPARATE TREATMENT
## ON BEHALF OF PLAINTIFFS YEREMIAN AND BROWN

109.   Plaintiffs restate the foregoing paragraphs as set forth fully herein.

110.   Defendant is an "employer" with one (1) or more employees.  MCL 37.2201(a).

19

111.   Plaintiffs hold sincere religious beliefs that conflict with Defendant's COVID-19 vaccine mandate.

112.   Plaintiffs supplied ample information regarding their religious beliefs.

113.   Plaintiffs' religious accommodation requests were denied.

114.   Defendant thereafter terminated Plaintiffs on or about October 18, 2021.

115.   Defendant failed to engage in the interactive process before denying Plaintiffs' religious accommodation requests and terminating Plaintiffs.

116.   Multiple reasonable accommodations could have been offered to Plaintiffs without enduring an undue hardship.

117.   Plaintiffs could have worn masks in the workplace.

118.   Plaintiffs could have social distanced in the workplace.

119.   Plaintiffs could have participated in temperature screenings.

120.   Plaintiffs could have tested for COVID-19 periodically.

121.   Plaintiffs could have engaged in frequent sanitizing and disinfecting.

122.   Plaintiffs could have worked remotely.

123.   Plaintiffs could have been reassigned.

124.   Plaintiffs have suffered mental and emotional distress, outrage, mental and physical anguish, loss of reputation, humiliation, embarrassment, indignity, and the physical effects associated therewith as a direct and proximate result.

125.   Plaintiffs have been placed in financial distress and they have suffered a loss of earnings and benefits, loss of health insurance, and a loss of and impairment of their earning capacity and ability to work as a direct and proximate result.

126.   Plaintiffs have been required to employ the services of an attorney.

127.   Defendant's actions were intentional and/or reckless.

**COUNT IV**
**VIOLATION OF THE ADA, 42 U.S.C.  § 12101, *et seq.*
DISABILITY DISCRIMINATION – FAILURE TO ACCOMMODATE
ON BEHALF OF PLAINTIFF BROWN**

128.   Plaintiff restates the foregoing paragraphs as if set forth fully herein.

129.   Defendant is an "employer" as a corporation engaged in an industry affecting commerce with fifteen (15) or more employees.  42 U.S.C. § 12111(5).

130.   Plaintiff was a "qualified individual."  42 U.S.C. § 12111(8).

131.   Defendant had a duty to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability." 42 U.S.C. § 12112(b)(5)(a).

132.   Plaintiff requested accommodations for his specific disability.

133.   Defendant refused to engage in the interactive process.

134.   Plaintiff could have worn masks in the workplace.

135.   Plaintiff could have social distanced in the workplace.

136.   Plaintiff could have participated in temperature screening.

137.   Plaintiff could have tested periodically.

138.   Plaintiff could have engaged in frequent sanitizing and disinfecting.

139.   Defendant could have reassigned Plaintiff.

140.   Defendant never explained why no accommodations could have worked.

141.   Defendant's actions were intentional and reckless.

142.   Plaintiff filed a charge with the U.S. Equal Employment Opportunity Commission ("EEOC") on May 13, 2022.

143.   Plaintiff has suffered mental and emotional distress, outrage, mental and physical anguish, loss of reputation, humiliation, embarrassment, indignity, and the physical effects associated therewith as a direct and proximate result.

144.   Plaintiff has been placed in financial distress and he has suffered a loss of earnings and benefits, loss of health insurance and a loss of and impairment of his earning capacity and ability to work as a direct and proximate result.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs request the following relief:

a.     Compensatory damages for monetary and non-monetary loss;

b.     Exemplary and punitive damages;

c.     Prejudgment interest;

d.     Reasonable attorney's fees; and

e.     Such other relief as in law or equity may pertain.

22

Respectfully Submitted,

HURWITZ LAW, PLLC

*/s/ Noah S. Hurwitz*
Noah Hurwitz (P74063)
Attorney for Plaintiff
Dated: May 3, 2023                    noah@hurwitzlaw.com

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

BRYANT BROWN,
HRATCH YEREMIAN,

      Plaintiffs,                    Case No. 2:22-CV-12978

v.                                   Hon. Victoria A. Roberts

MGM GRAND CASINO,

      Defendant.

| | |
|---|---|
| Noah S. Hurwitz (P74063) | Allan S. Rubin (P44420) |
| Grant M. Vlahopoulos (P85633) | JACKSON LEWIS P.C. |
| Kara F. Krause (P85487) | Attorneys for Defendant |
| HURWITZ LAW PLLC | 2000 Town Center, Ste. 1650 |
| *Attorneys for Plaintiff* | Southfield, MI 48075 |
| 340 Beakes St., Suite 125 | (248) 936-1900 |
| Ann Arbor, MI 48104 | allan.rubin@jacksonlewis.com |
| (844) 487-9489 | |
| Noah@hurwitzlaw.com | |
| Grant@hurwitzlaw.com | |
| Kara@hurwitzlaw.com | |

## DEMAND FOR TRIAL BY JURY

Plaintiffs Bryant Brown and Hratch Yeremian ("Plaintiffs"), by and through their attorneys Hurwitz Law, PLLC, hereby demand a trial by jury, for all issues so triable.

Respectfully Submitted,

HURWITZ LAW, PLLC

*/s/ Noah S. Hurwitz*
Noah Hurwitz (P74063)
Attorney for Plaintiff
Dated: May 3, 2023                    noah@hurwitzlaw.com