UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRYANT BROWN[1] and HRATCH
YEREMIAN,

                    Plaintiffs,

                                                    Case No.: 2:22-cv-12978
v.                                                  Hon. Gershwin A. Drain

MGM GRAND CASINO,

                    Defendant.
_____/

## ORDER DENYING PLAINTIFF'S MOTION IN LIMINE [#54], DENYING DEFENDANT'S MOTIONS IN LIMINE [#51, #52], AND GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION IN LIMINE [#53]

## I.    INTRODUCTION

Plaintiff Hratch Yeremian ("Plaintiff") filed the instant complaint against his former employer, MGM Grand Detroit ("Defendant"), alleging that Defendant failed to accommodate his religion under Title VII and subjected him to disparate treatment discrimination under Title VII and the Elliot-Larsen Civil Rights Act ("ELCRA")

---

[1] Bryant Brown's claims were dismissed with prejudice on August 20, 2024 via stipulation of the parties. Therefore, this Order addresses only Hratch Yeremian's claims.

1

when it terminated his employment for his refusal to comply with Defendant's mandatory COVID-19 vaccination policy. ECF No. 11, PageID.109–114. On November 18, 2024, the Court granted Defendant summary judgment on Plaintiff's disparate treatment discrimination claims under Title VII and the ELCRA. ECF No. 45. However, the Court permitted Plaintiff's failure to accommodate claim under Title VII to proceed to trial. *Id.* Trial is scheduled for January 7, 2025. ECF No. 26.

Presently before the Court are the parties' various motions *in limine*, which are fully briefed. *See* ECF No. 51; ECF No. 52; ECF No. 53; ECF No. 54. The Court concludes that oral argument will not aid in the disposition of these motions and, accordingly, will determine the outcome on the briefs. *See* E.D. Mich. L.R. 7.1(f)(2). For the reasons that follow, Plaintiff's motion [ECF No. 54] and Defendant's motions [ECF No 51; ECF No. 52] are DENIED in their entireties. Defendant's motion [ECF No. 53] is GRANTED IN PART and DENIED IN PART. Specifically, the Court GRANTS Defendant's request to exclude evidence of dismissed and settled claims. The Court DENIES Defendant's request to exclude Rosy and Alik Yeremian as witnesses. The Court GRANTS Defendant's request to exclude Sarkis Steve Karjian, Cindi Testa, and Fred Testa as witnesses, and to exclude Plaintiff's bank statements and photographs. *See* Plaintiff's Exhibits 51–57 of the parties' Amended Joint Final Pretrial Order ("JFPTO"). The Court DENIES Defendant's request to exclude Plaintiff's proposed EEOC Guidance. *See* Plaintiff's Exhibit 50

of the JFPTO. Finally, the Court GRANTS AS MOOT Defendant's request to exclude Plaintiff's medical articles about over-the-counter medications, COVID-19 vaccines, and fetal stem cell research.

## II.    BACKGROUND

Plaintiff Yeremian was a longtime employee of Defendant MGM Grand Detroit, having worked several positions within the company since his hiring in June 1999. ECF No. 33-6, PageID.1287–88. At the time of the COVID-19 pandemic, Plaintiff held the title of Warehouse Manager, a salaried position. *Id.* In response to the pandemic, Defendant announced a mandatory COVID-19 vaccination policy for its salaried and newly hired employees in August 2021. ECF No. 34-10. Defendant required that all such employees submit proof of vaccination by October 15, 2021, or face disciplinary action up to termination. ECF No. 34-10; ECF No. 34-11. However, Defendant indicated that it would consider employee requests to be exempt from the policy or for accommodations. ECF No. 34-11. Defendant's union employees, 80% of its workforce, were not subject to the vaccination policy because Defendant's bargaining agreement with the union did not permit it to unilaterally impose the policy on the employees. ECF No. 34-2, PageID.1642.

Plaintiff, an Orthodox Apostolic Christian, submitted a request for an accommodation to the vaccination policy on religious grounds. ECF No. 33-6, PageID.1289; ECF No. 33-7. Plaintiff indicated that he has "a sincere religious

3

belief," and "oppose[s] as a matter of religious conviction, to be inoculated with the [COVID-19] vaccine against [his] will." ECF No. 33-7. Later, Plaintiff also informed Defendant that he opposed vaccination because all the available vaccines used cell lines from aborted fetuses in their manufacturing or testing. ECF No. 33-10, PageID.1357. Plaintiff suggested continued social distancing, mask wearing, and remote working where possible as potential measures Defendant could take to accommodate his religious belief. ECF No. 33-7. Ultimately, Defendant denied Plaintiff's accommodation request. Defendant expressed doubt about the sincerity of Plaintiff's religious belief and whether his objections to the vaccine were secular or religious in nature. ECF No. 34-15. However, Defendant assumed without conceding that Plaintiff had a sincere religious belief. Nevertheless, Defendant concluded that accommodating Plaintiff would pose an undue hardship on its business and denied any accommodation on those grounds. *Id.*

When Plaintiff refused to comply with the vaccination policy after Defendant's denial of his religious accommodation request, Defendant terminated his employment on October 16, 2021. ECF No. 33-6, PageID.1310. In December 2021, a couple of months after Plaintiff's termination, Defendant granted a medical accommodation request from a new hire Dealer Trainee. ECF No. 33-18. Defendant's accommodation for the Dealer Trainee included wearing a face mask,

social distancing, and submitting weekly COVID-19 PCR testing in lieu of vaccination. *Id.*

Plaintiff sued Defendant under Title VII, alleging religious discrimination in the form of (1) failing to accommodate his religion, and (2) disparate treatment. *Id.* at PageID.109–12. In addition, Plaintiff brought a Michigan state law claim under the Elliot-Larsen Civil Rights Act for religious disparate treatment discrimination. *Id.* at PageID.112–14.

On August 29, 2024, the parties submitted cross-motions for summary judgment. ECF No. 33; ECF No. 34. The Court denied Plaintiff's motion for summary judgment in its entirety. ECF No. 45.  In contrast, the Court granted Defendant's motion for summary judgment as it pertained to Plaintiff's Title VII and ELCRA disparate treatment discrimination claims. *Id.* However, the Court denied Defendant's motion as it pertained to the failure to accommodate claim. *Id.* Thus, only the failure to accommodate claim survives.

With trial set to begin on January 7, 2025, the parties have submitted motions *in limine* seeking to exclude various pieces of evidence. In Defendant's first motion *in limine*, Defendant seeks to exclude testimony or evidence under Federal Rules of Evidence 402 and 403 regarding its treatment of union employees relative to its vaccine policy, the medical accommodation request it granted to the Dealer Trainee, and Plaintiff's daughter's medical condition. ECF No. 51. In Defendant's second

motion *in limine*, Defendant seeks to exclude testimony or evidence about front pay, and to limit testimony or evidence of back pay to the period between October 2021 and March 2022, on the ground that Plaintiff is not entitled to such damages. ECF No. 52. In Defendant's third motion *in limine*, Defendant seeks to exclude testimony or evidence about Plaintiff's dismissed disparate treatment claim, former Plaintiff Bryant Brown's dismissed claims, settlement negotiations, and witnesses and documents which were not timely disclosed in accordance with the Court's orders. ECF No. 53.

Plaintiff filed one omnibus motion *in limine*, seeking to exclude testimony or evidence about the following topics: undue hardship outside of September 2021;[2] public harm that could result from a verdict positive to Plaintiff; placing fault on anyone else; Defendant's good character or philanthropic endeavors; and collateral sources or insurance. ECF No. 54.

---

[2] In Plaintiff's motion, he argues that any testimony or evidence about undue hardship outside of *October* 2021 should be prohibited. ECF No. 54, PageID.2769. Plaintiff's reason is that undue hardship should be judged "based only on the information known to [Defendant] at the time of the decision." *Id.* However, as Defendant points out in response, Defendant decided to deny Plaintiff's accommodation request in *September*, not October. ECF No. 56, PageID.2787. Plaintiff admits that the correct month is September.

### III.   LAW & ANALYSIS

### a. Motion in Limine Standard

Although the Federal Rules of Evidence do not expressly authorize *in limine* rulings, the practice of deciding motions *in limine* prior to trials "was developed pursuant to a district court's inherent authority to manage the course of trials." *Aetna, Inc. v. Blue Cross Blue Shield of Mich.*, No. 11-15346, 2015 WL 1646464, at *1 (E.D. Mich. Apr. 14, 2015) (citing *United States v. Luce*, 469 U.S. 38, 41 n.4 (1984)). Motions *in limine* are used to "ensure evenhanded and expeditious management of trials" by preemptively "eliminating evidence that is clearly inadmissible for any purpose." *Ind. Ins. Co. v. Gen. Elec. Co.*, 326 F. Supp. 2d 844, 846 (E.D. Mich. 2004).

However, "one practical difficulty in ruling on such motions is the absence of context that comes when the challenged evidence is presented with the other proofs at trial." *Figgins v. Advance Am. Cash Advance Ctrs. of Mich., Inc.*, 482 F. Supp. 2d 861, 865 (E.D. Mich. 2007). Thus, unless "evidence is clearly inadmissible on all potential grounds[,]" a court generally should defer such rulings "until trial so that questions of foundation, relevancy[,] and potential prejudice may be resolved in proper context." *Ind. Ins. Co.*, 326 F. Supp. 2d at 846. Furthermore, a court is not bound by its *in limine* rulings; it may "change its determination during the trial where sufficient facts have developed to warrant the change or even if nothing unexpected

7

happens at trial." *Aetna, Inc.*, 2015 WL 1646464, at *1 (citing *Luce*, 469 U.S. at 41–42).

### b. Defendant's First Motion in Limine (ECF No. 51)

In Defendant's first motion *in limine*, it argues that testimony, evidence, or any other reference relating to its treatment of union employees, to the medical accommodation request it granted, or to Plaintiff's daughter's medical condition should be excluded as irrelevant under Federal Rules of Evidence 401 and 402, or as unfairly prejudicial and a waste of time and judicial resources under Federal Rule of Evidence 403.

Federal Rule of Evidence 402 states that relevant evidence is generally admissible, unless the United States Constitution, a federal statute, the Federal Rules, or other rules prescribed by the Supreme Court state otherwise. Fed. R. Evid. 402. In contrast, "[i]rrelevant evidence is not admissible." *Id.* Evidence is considered relevant if "(a) it has *any* tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401 (emphasis added). "The standard for relevancy is extremely liberal." *United States v. Whittington*, 455 F.3d 736, 738 (6th Cir. 2006) (quoting *Douglass v. Eaton Corp.*, 956 F.2d 1339, 1344 (6th Cir. 1992)) (internal quotation marks omitted). Thus, even if the evidence would be "insufficient to prove the ultimate point for which it is offered, [a court] may not exclude the evidence if

8

it has the slightest probative worth." *Id.* (quoting *DXS, Inc. v. Siemens Med. Sys., Inc.*, 100 F.3d 462, 475 (6th Cir. 1996)).

Notwithstanding Rule 402's liberality, a court may exclude relevant evidence "if its probative value is *substantially* outweighed by a danger of… unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403 (emphasis added). Even under Rule 403, "the cards are stacked in favor of admissibility—only when the risk of prejudice is both *unfair* and *substantially weightier* than any probative value does the court have discretion to exclude the evidence." *United States v. Lang*, 717 Fed. App'x 523, 531 (6th Cir. 2017). "Because Rule 403 requires the exclusion of relevant evidence, it is an extraordinary measure that should be used sparingly." *United States v. Morris*, 79 F.3d 409, 412 (5th Cir. 1996).

i.   <u>Union Employees</u>

Defendant first argues that any evidence pertaining to its treatment of union employees, or the fact that union employees were not subject to the vaccine policy, is irrelevant, unfairly prejudicial, confusing, and a waste of resources. ECF No. 51, PageID.2504–07. Defendant states that it anticipates Plaintiff will bring up this topic to rebut Defendant's defense that accommodating Plaintiff would have been an undue hardship. *Id.* at PageID.2504. Defendant notes that the undue hardship defense is a "highly individualized inquiry," and argues that this makes the fact that

9

union employees were not subject to the policy "irrelevant to [Defendant's] undue hardship decision with respect to Plaintiff." *Id.* at PageID.2505. In the alternative, Defendant contends that such evidence would confuse the issues and waste judicial resources, because introducing this evidence at trial would result in testimony pertaining to Defendant's negotiations with the union with respect to the vaccine policy. *Id.* at PageID.2507. Finally, Defendant argues that this evidence would be unfairly prejudicial because Plaintiff "has made misleading statements… that union employees were granted exemptions from the vaccine policy, despite that the vaccine policy never applied to them[,]" and "Plaintiff… will undoubtedly make similar statements at trial[.]" *Id.*

Evidence pertaining to Defendant's treatment of union employees is clearly relevant. Defendant stated that accommodating Plaintiff would have imposed an undue hardship because (1) Plaintiff's lack of vaccination posed a safety risk to others; and (2) Plaintiff's lack of vaccination could lead to COVID-19 spreading through the warehouse, resulting in another shutdown. ECF No. 34-4, PageID.1687–88. However, the fact that all the union workers were not subject to the vaccination policy undercuts Defendant's contention that accommodating Plaintiff would have made as much of an impact as it claims. *See* ECF No. 45, PageID.2467 n.13 (Opinion and Order on Summary Judgment Motions).

Furthermore, Defendant's argument that the union employee evidence is irrelevant because Plaintiff's circumstances were different than union employees' circumstances misconstrues the concept of relevancy. *See* ECF No. 51, PageID.2505. The fact that the undue hardship analysis is individualized means that the distinctions between Plaintiff and the union employees go to the weight of the evidence—or in other words, its strength—and does not mean the evidence is completely irrelevant. *See United States v. Wilson*, 837 Fed. App'x 396, 400 (6th Cir. 2020) (quoting David L. Faigman, *Evidence: Admissibility vs. Weight in Scientific Testimony*, 1 JUDGE'S BOOK 45, 45 (2017)) ("Fundamental to all evidence codes is the distinction between admissibility and weight. Judges decide admissibility, and, if the evidence is admitted, jurors decide what weight to give it.").[3] Thus, the union evidence is relevant—indeed, highly probative of Plaintiff's rebuttal to Defendant's claim of undue hardship—and admissible under Rule 402.

---

[3] Moreover, Defendant's argument that the union evidence is not relevant because Defendant could not unilaterally impose a vaccination policy on the union does not make sense in this context. To prove undue hardship, the employer must show that the burden of accommodating the employee would be "substantial in the overall context of an employer's business." *Groff v. DeJoy*, 600 U.S. 447, 468 (2023). The fact that Defendant was unable to impose a vaccination policy on the union employees makes no difference to the ultimate question of whether accommodating Plaintiff would have been an undue hardship; the fact that those individuals were potentially unvaccinated—regardless of the reason—suggests that Plaintiff's lack of vaccination may not have had the severity of consequences that Defendant alleges it would have had.

In the alternative, Defendant argues that the union evidence will unfairly prejudice it at trial because Plaintiff will "undoubtedly" mischaracterize the evidence by stating that Defendant *exempted* union workers from the policy, rather than stating that union workers were *not subject* to the policy due to legal reasons. However, the Court is not amenable to broadly excluding such highly probative evidence on the off chance that Plaintiff might misspeak at trial. *See Ind. Ins. Co.*, 326 F. Supp. 2d at 846 (stating that courts should only grant motions *in limine* where evidence is "clearly inadmissible" on all potential grounds); *Doe v. Claiborne Cnty., Tenn.*, 103 F.3d 495, 515 (6th Cir. 1996) ("Where a decision to exclude evidence on the basis of Rule 403 is overly restrictive such that it precludes a plaintiff from the full opportunity to present his case to a jury, it will be deemed an abuse of discretion."). At trial, Defendant may object to any mischaracterizations that Plaintiff makes, and the Court will ensure that the testimony and arguments the jury receives are fair and accurate. The Court cannot conclude that any prejudice resulting to Defendant from a mischaracterization at trial (especially where corrected by an objection) *substantially* outweighs the probative value of this highly probative evidence. Fed. R. Evid. 403.

Defendant also argues that this evidence will confuse the issues and waste time because it will require testimony regarding Defendant's negotiations with the union and its legal obligations thereto. The Court cannot see why these points would

need to be belabored at trial in such a way that the trial would become confusing or delayed. To the extent such testimony exceeds what is necessary and appropriate at trial, the parties may object on Rule 403 grounds contemporaneously. *See Johnson v. Ashby*, 808 F.2d 676, 678 (8th Cir. 1987) ("[I]t may be an abuse of the trial court's discretion to exclude probative, non-cumulative evidence simply because its introduction will cause delay.").

Therefore, Defendant's request to exclude evidence of union employees is DENIED.

## ii.   Medical Accommodation

Defendant next argues that evidence pertaining to the medical accommodation it granted to the Dealer Trainee is irrelevant, or in the alternative, would be unfairly prejudicial, confuse the issues, mislead the jury, and waste time and judicial resources. ECF No. 51, PageID.2507–10. Like its argument regarding the union employees, Defendant states that "how Defendant treated others is irrelevant," and that the circumstances under which Defendant granted the medical accommodation request were different than the circumstances under which Defendant denied Plaintiff's accommodation request. *Id.* at PageID.2508–09. Furthermore, Defendant contends that this evidence should be excluded under Rule 403 because introducing the evidence would require an explanation of the difference between religious and

medical accommodation requests and their differing legal standards, which would be misleading and confusing for the jury. ECF No. 63, PageID.2947.

The evidence of the medical accommodation that Defendant granted is relevant because Defendant granted the Dealer Trainee nearly identical accommodations to those that Plaintiff had asked for. ECF No. 33-7; ECF No. 33-18.  As such, the evidence suggests that those accommodations were possible in some circumstances, and that making such accommodations may not have been an undue burden in Plaintiff's case. This surpasses the extremely low bar for relevancy. *See Whittington*, 455 F.3d at 738 (even if evidence would be "insufficient to prove the ultimate point for which it is offered, [a court] may not exclude the evidence if it has the slightest probative worth."). The fact that the circumstances between the two requests were different (such as the fact that the employee worked in a different department than Plaintiff and had different responsibilities) goes to the strength of the evidence—which the jury will weigh—not to its admissibility under Rule 402. *See Wilson*, 837 Fed. App'x at 400.[4]

---

[4] Furthermore, Defendant's argument that the medical accommodation is irrelevant because it was made on medical grounds whereas Plaintiff's was made on religious grounds does not make sense in the undue hardship context. Whether the accommodation was based on religious or medical grounds does not have any bearing on whether Plaintiff's requested accommodations would have objectively been an undue hardship on Defendant's overall business. See *Groff*, 600 U.S. at 468. Regardless of the grounds upon which Defendant granted the accommodation, the fact that it did grant an accommodation at all may suggest that doing so would not

In addition, the evidence need not be excluded pursuant to Rule 403. To the extent Defendant informs the jury that medical exemption requests and religious exemption requests are technically subject to different standards, *see Groff*, 600 U.S. at 471,[5] the Court is confident the jury will be able to understand and consider those standards in determining how to regard the medical accommodation evidence, given that it is the province of the jury to apply the law to facts. *See United States v. Mentz*, 840 F.2d 315, 319 (6th Cir. 1988) ("The jury… independently determines the facts and applies the law to those facts, in reaching its fateful decision."). The Court cannot conclude that one additional standard being mentioned in trial will so derail the case as to make any confusion or prejudice *substantially* outweigh the probative value of the evidence. Fed. R. Evid. 403.

Therefore, Defendant's request to exclude evidence of the medical accommodation is DENIED.

iii.   Plaintiff's Daughter's Medical Condition

Defendant's final argument in its first motion *in limine* is that evidence regarding Plaintiff's daughter's medical condition is irrelevant, or in the alternative,

_____

have been an undue hardship in Plaintiff's case. This passes Rule 401's liberal definition of relevancy.

[5] The Americans with Disabilities Act's undue hardship standard is "significant difficulty and expense," whereas Title VII's undue hardship standard is "substantial increased costs in relation to the conduct of its particular business." *Groff*, 600 U.S. at 470–71.

substantially outweighed by unfair prejudice, confusion, misleading the jury, delay, or waste of time. ECF No. 51, PageID.2510. Plaintiff indicated that his daughter, Alik, developed alopecia two weeks after receiving the Tdap vaccine. ECF No. 34-3, PageID.1661. Medical professionals never confirmed that the Tdap vaccine is what caused her alopecia. *Id.* at PageID.1662. Nevertheless, Plaintiff claims that Alik's development of alopecia was a sign from God that Plaintiff and his family should not receive vaccines again. *Id.* at PageID.1661. Plaintiff intends to introduce evidence about Alik's alopecia because the "vaccine injury played a crucial rule in Plaintiff's development of his religious beliefs" and "Plaintiff has tons of latitude in a religious accommodation case to explain why he was steered by his faith to reject vaccination." ECF No. 57, PageID.2831. Defendant argues that this evidence is irrelevant because Plaintiff need not demonstrate how his religious beliefs formed. Alternatively, Defendant argues that this evidence would confuse and inflame the jury by making jurors believe that Plaintiff's daughter suffered a "vaccine injury" (despite no doctor ever confirming as such) and will encourage jurors to decide the case based on sympathy. ECF No. 63, PageID.2949.

Plaintiff's experience with Alik's alopecia was arguably religious, despite being based on a medical event, because he believed Alik's condition was a sign from God that Plaintiff should no longer vaccinate himself or his children. Given that proving that he has a sincere religious belief is one of the elements of Plaintiff's

prima facie case, "[e]vidence of Plaintiff's religious background and beliefs is relevant to" this ultimate issue and "might impact the jury's determination of this case." *Nobach v. Woodland Vill. Nursing Home Ctr.*, No. 1:11cv346-HSO-RHW, 2012 U.S. Dist. LEXIS 204678, at *2 (S.D. Miss. Sept. 17, 2012). Therefore, this evidence is relevant under Rule 401's low threshold for relevancy when offered to support the existence of Plaintiff's religious beliefs.

Furthermore, the Court finds that the dangers of unfair prejudice, confusing the issues, or misleading the jury do not substantially outweigh the probative value of this evidence, particularly in the "vacuum" of a motion *in limine*. *See Watts v. United Parcel Serv.*, No. 1:03-cv-00589, 2013 WL 4776976, at *4 (S.D. Ohio Sept. 5, 2013) (calling a motion *in limine* an "evidentiary vacuum" because a court lacks the context that trial provides). Exclusion of evidence under Rule 403 should be used "sparingly," *Morris*, 79 F.3d at 412, and generally "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Doe*, 103 F.3d at 515 (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 596 (1993)) (internal alterations omitted). In this case, Defendant's cross examination of Plaintiff on this issue is a tool to remedy any prejudice, given that Plaintiff admitted he never sought the advice of a medical professional after his daughter's diagnosis.

The Court emphasizes that it is only allowing the introduction of evidence pertaining to Plaintiff's daughter's alopecia for the sole purpose of demonstrating the religious significance that her condition had on Plaintiff, given that there is no confirmed diagnostic connection between the daughter receiving the Tdap vaccine and her development of alopecia. As such, the Court will entertain objections during the proceedings if Plaintiff mischaracterizes his daughter's illness as a true "vaccine injury" or if such evidence is otherwise being used in a misleading, confusing, or inflammatory way.

Therefore, Defendant's request to exclude evidence of Plaintiff's daughter's medical condition is DENIED.

### c. Defendant's Second Motion in Limine (ECF No. 52)

Defendant's second motion *in limine* claims that Plaintiff is not entitled to front pay and is not entitled to back pay beyond March 2022 as a matter of law. ECF No. 52, PageID.2560–61. Because Plaintiff began employment with Greektown Casino in March 2022 for a higher salary than he received with Defendant, Defendant argues he is not entitled to front pay damages. Furthermore, because of Plaintiff's subsequent employment, Defendant claims that Plaintiff's back pay should be cut off as of that month. Therefore, Defendant argues that any testimony or evidence pertaining to front pay or to back pay after March 2022 should be excluded. *Id.* at PageID.2562–63.

Motions *in limine* are "designed to narrow the *evidentiary issues* for trial and to eliminate unnecessary trial interruptions," whereas summary judgment motions are "designed to eliminate a trial in cases where there are no *genuine issues of material fact*[.]" *Louzon v. Ford Motor Co.*, 718 F.3d 556, 561 (6th Cir. 2013) (emphasis added). Given the differences between the two motion types, "[a]llowing a party to litigate matters that have been or should have been resolved at an earlier stage… deprives their opponents of the procedural protections that attach at summary judgment." *Id.* As such, considering non-evidentiary matters in a motion *in limine* may constitute reversible error. *Id.* at 566.

Courts have repeatedly held that issues pertaining to the scope or propriety of damages are substantive issues that are inappropriate for motions *in limine*. *See Smith v. Mich. Dep't of Corrs.*, No. 20-10421, 2023 WL 1783685, at *3 (E.D. Mich. Feb. 6, 2023) (finding that determining the propriety of front pay "would have been more appropriately raised in a motion for summary judgment."); *Caudle v. Nielsen Co. (US), LLC*, No. 17-13737, 2020 WL 8572402, at *3 (E.D. Mich. Dec. 28, 2020) (finding that a motion *in limine* "is the wrong vehicle to narrow the scope of damages."); *Pickens v. Dowdy*, No. 17-2205-tmp, 2018 U.S. Dist. LEXIS 219324, at *3 (W.D. Tenn. July 31, 2018) ("[T]o the extent that [defendant] is asserting that consideration of punitive damages would be inappropriate as a matter of law, the motion is procedurally improper."); *Tuttle v. Tyco Elecs. Installation Servs., Inc.*,

19

No. 2:06-cv-581, 2008 U.S. Dist. LEXIS 12307, at *12–*13 (S.D. Ohio Feb. 7, 2008) ("Defendant's request to exclude evidence of emotional damages is more a motion for judgment on the pleadings or for summary judgment… than it is a motion *in limine.* The time for filing such dispositive motions has long closed and defendants cannot evade this Court's deadlines simply by captioning its dispositive motion in a creative manner.").

Defendant's argument is inappropriate for a motion *in limine.* Instead, Defendant's argument for excluding evidence of these damages should have been raised in its motion for summary judgment. Defendant cites two unpublished district court cases for the proposition that it is procedurally acceptable to determine the scope of damages via a motion *in limine. See DeFelice v. Heritage Animal Hosp., Inc.*, No. 08-14734, 2010 U.S. Dist. LEXIS 103075, at *1 (E.D. Mich. Sept. 29, 2010); *Evanoff v. Banner Mattress Co.*, No. 3:07CV1754, 2009 U.S. Dist. LEXIS 56854, at *1 (N.D. Ohio June 17, 2009). These cases granted the defendant's requests to exclude evidence of front pay *in limine* because the courts found that the plaintiff was not entitled to front pay as a matter of law. However, given that these are unpublished cases that precede the Sixth Circuit's decision in *Louzon*, which is binding on this Court, the Court declines to follow them.

Therefore, Defendant's request to exclude evidence of front pay or of back pay after March 2022 is DENIED WITHOUT PREJUDICE.

### d. Defendant's Third Motion in Limine (ECF No. 53)

In Defendant's final motion *in limine*, Defendant requests that the Court exclude evidence of Plaintiff's dismissed disparate treatment claim, of former plaintiff Bryant Brown's dismissed claims, and of the parties' settlement negotiations. ECF No. 53, PageID.2623–26. Plaintiff concurs with these requests. ECF No. 59, PageID.2850. Therefore, Defendant's request to exclude this evidence is GRANTED.

Defendant also seeks to exclude specific witnesses and evidence. Specifically, Defendant argues that the Court should exclude Rosy Yeremian (Plaintiff's wife), Alik Yeremian (Plaintiff's daughter), Sarkis Steve Karjian (Plaintiff's family member), and Cindi and Fred Testa (Plaintiff's friends) as witnesses because these witnesses were not disclosed in Plaintiff's lay witness list which was due December 22, 2023. *See* ECF No. 20, PageID.355. In addition, Defendant claims that the Court should exclude Exhibits PPPP–VVVV of the parties' JFPTO, which consist of Plaintiff's various bank statements, wage payment details, and family photos because they were not produced during discovery. Finally, Defendant argues that the public records Plaintiff seeks to introduce, Exhibits ZZZ–OOOO of the JFPTO, should be excluded because they were not produced in discovery, are inadmissible hearsay, and lack foundation.

21

i.    Lay Witnesses

Federal Rule of Civil Procedure 26(a)(3) requires parties to disclose the name

and contact information for each witness it intends to call at trial other than solely

for impeachment. Fed. R. Civ. P. 26(a)(3)(A)(i). The rules require that these

disclosures be made at least 30 days before trial unless the court provides otherwise.

*Id.*(a)(3)(B). If a party fails to disclose a witness as required by Rule 26(a)(3), the

Federal Rules provide that the party "is not allowed to use that… witness… at a trial,

unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).

In order to determine whether a failure to disclose is "substantially justified" or

"harmless," the Sixth Circuit considers the following factors:

> (1) the surprise to the party against whom the evidence would be
> offered; (2) the ability of that party to cure the surprise; (3) the extent
> to which allowing the evidence would disrupt the trial; (4) the
> importance of the evidence; and (5) the nondisclosing party's
> explanation for its failure to disclose the evidence.

*Howe v. City of Akron*, 801 F.3d 708, 748 (6th Cir. 2015).

District courts have "broad discretion" in applying the *Howe* factors and "need

not apply each one rigidly." *Bisig v. Time Warner Cable, Inc.*, 940 F.3d 205, 219

(6th Cir. 2019) (quoting *Bentley v. Highlands Hosp. Corp.*, No. CV 15-97-ART-

EBA, 2016 WL 5867496, at *10 (E.D. Ky. Oct. 6, 2016)). "The factors lend

themselves to the task at the heart of Rule 37(c)(1): separating 'honest,' harmless

mistakes from the type of 'underhanded gamesmanship' that warrants the harsh

remedy of exclusion." *Id.* "The Advisory Committee Notes to the 1993 Amendments (including Rule 37(c)(1)) strongly suggest that 'harmless' involves an honest mistake on the part of a party coupled with sufficient knowledge on the part of the other party." *Howe*, 801 F.3d at 747. (cleaned up). The burden is on the non-moving party to show that its nondisclosure was harmless or substantially justified. *SPX Corp. v. Bartec USA, LLC*, 574 F. Supp. 2d 748, 757 (E.D. Mich. 2008).

*Rosy and Alik Yeremian.* Defendant claims that Rosy and Alik Yeremian were not identified as witnesses in Plaintiff's lay witness disclosure list filed pursuant to the Court's September 28, 2023 scheduling order. *See* ECF No. 20; ECF No. 24. While these witnesses were not named specifically, Plaintiff's witness list indicated that he may call all persons identified during depositions and all persons named in discovery responses. *See* ECF No. 24, PageID.368. During discovery, Plaintiff identified Rosy and Alik as his wife and daughter, respectively, and stated that he lives with them. ECF No. 59-1, PageID.2879–80. During Plaintiff's deposition, he testified about how Alik developed alopecia and that he took this disease as a religious sign that he should no longer receive vaccines. ECF No. 34-3, PageID.1661–62. Plaintiff also testified that he attends church with Rosy and that they both take "natural remedies" rather than any medicine. ECF No. 33-6, PageID.1289, 1302–03.

Although Plaintiff failed to list Rosy and Alik as witnesses by name as required by Rule 26(a)(3) and only included them in a general category of potential witnesses, the *Howe* factors do not favor exclusion. Defendant's surprise is minimal because Rosy and Alik were identified in discovery as individuals who have knowledge about Plaintiff's religious beliefs, and Defendant knows the information they will testify about. Knowing that Plaintiff's preliminary witness list included all individuals identified during discovery, Defendant could have cured any surprise by seeking more information about Rosy and Alik. *See ASC Engineered Sols., LLC v. Island Indus., Inc.*, 2:20-cv-02284-JPM-cgc, 2021 WL 2941989, at *3 (W.D. Tenn. July 13, 2021) (noting that a party could have cured surprise by deposing a witness it had notice about). Moreover, Rosy and Alik will only be used as witnesses to corroborate the distinct issue of whether Plaintiff has a sincere religious belief, by providing background information about Plaintiff's religiosity. The scope of their testimonies will be minimal, so they will not disrupt trial. Furthermore, their testimonies will serve as corroboration for Plaintiff's beliefs—outside of his own testimony—which are a foundational issue in Plaintiff's prima facie case; therefore, they have some importance. Although Plaintiff has not provided an explanation for the failure to identify Rosy and Alik as witnesses sooner, the rest of the *Howe* factors support a finding of admissibility.

To the extent Defendant argues that Rosy and Alik's testimonies are irrelevant, they are not irrelevant because they will be used to establish an element of Plaintiff's prima facie case, the sincerity of his religious beliefs. In determining sincerity, issues of "length of adherence," "knowledge about the belief system," and whether Plaintiff has remained consistent with his beliefs are "relevant to the sincerity analysis." *Ackerman v. Washington*, 16 F.4th 170, 181 (6th Cir. 2021). Assuming Rosy and Alik's testimonies would bolster these points based on their personal knowledge of Plaintiff's beliefs and his practice of religion, their testimonies are relevant under Rule 401.

*Sarkis Steve Karjian, Cindi Testa, and Fred Testa.* Defendant states that Karjian and the Testas were not identified as witnesses in Plaintiff's lay witness disclosure list filed pursuant to the Court's September 28, 2023 scheduling order. *See* ECF No. 20; ECF No. 24. Plaintiff responds that he only intends to call these witnesses as rebuttal witnesses if Defendant attacks whether Plaintiff has a sincerely held belief. In Plaintiff's witness disclosure list, he identified "[a]ny and all necessary rebuttal… witnesses" as potential witnesses he may call. ECF No. 24, PageID.368.

These witnesses differ from Rosy and Alik. Whereas Rosy and Alik were both (1) included within a general category of witnesses in Plaintiff's witness list, *and* (2) were identified in discovery and in depositions, Karjian and the Testas were not

mentioned in discovery prior to the Joint Final Pretrial Order at all. Moreover, not only was Defendant completely unaware of the existence of these witnesses, but Plaintiff has also not explained what knowledge these witnesses have of his religious beliefs or how they would be able to rebut any argument of Defendant.

The *Howe* factors favor excluding these witnesses. Defendant is surprised by these witnesses because they have never been mentioned prior to the Joint Final Pretrial Order. "General categories of witnesses [in a preliminary witness list] do not provide sufficient notice to Defendant." *Pearce v. Hazel Park Police Officer*, No. 16-11499, 2019 WL 5586965, at *1 (E.D. Mich. Oct. 30, 2019) (finding that witnesses never identified by name prior to Joint Final Pretrial Order must be excluded). Plaintiff claims that Defendant can cure surprise through cross-examination at trial, but the Court disagrees. Defendant has no way of knowing what these witnesses know, where their knowledge comes from, or about what they will specifically testify, prior to listening to their direct examinations at trial. *See Abrams v. Nucor Steel Marion, Inc.*, 694 Fed. App'x 974, 982 (6th Cir. 2017) (finding that "[t]he surprise to Defendant is obvious" where "there is no evidence that Defendant knew, or could have known" what undisclosed witnesses would say at trial). This is precisely the surprise that the Rule 26 disclosure requirements are designed to prevent. *Fed. Deposit Ins. Corp. v. Cherry, Bekaert & Holland*, 131 F.R.D. 202, 204

(M.D. Fla. 1990) (the purpose of discovery rules is to make trial "less of a game of blindman's bluff and more a fair contest.").

Furthermore, the value of these witnesses' testimonies is likely minimal considering that the Court is permitting Rosy and Alik to testify regarding Plaintiff's religious beliefs. *See United States v. Rich*, No. 21-0432-BAH, 2024 U.S. Dist. LEXIS 106776, at *3 (D. Md. June 14, 2024) ("The probative value of… evidence is reduced by its cumulative nature."). Finally, Plaintiff has offered no explanation for the failure to name these witnesses. The fact that Plaintiff intends to call these witnesses "as rebuttal witnesses does not excuse [Plaintiff's] failure to disclose [these] individuals[.]" *Schut v. Stafford-Smith, Inc.*, No. 1:12-cv-787, 2014 WL 12635880, at *3 (W.D. Mich. Jan. 27, 2014). While it is unclear how disruptive these witnesses' testimonies would be during trial, the balance of the *Howe* factors indicates that exclusion is warranted.

Therefore, Defendant's request to exclude Rosy and Alik Yeremian as witnesses is DENIED. Defendant's request to exclude Sarkis Steve Karjian, Cindi Testa, and Fred Testa as witnesses is GRANTED.

## ii.   Bank Statements, Pay Records, and Photographs

Federal Rule of Civil Procedure 26(a)(3) requires parties to disclose the documents or other exhibits it expects to offer during trial. Fed. R. Civ. P. 26(a)(3)(A)(iii). The rules require that these disclosures be made at least 30 days

before trial unless the court provides otherwise. *Id.*(a)(3)(B). Like with the disclosure of lay witnesses, if a party fails to disclose documents or other exhibits as required by Rule 26, the Federal Rules provide that the party "is not allowed to use that information… at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). The *Howe* factors also apply in cases of undisclosed documents and other exhibits to determine whether nondisclosure was substantially justified or harmless. *Howe*, 801 F.3d at 748.

   *Bank statements and wage details.* Plaintiff seeks to introduce bank statements ranging from October 2021 through May 2022. Plaintiff also seeks to introduce his pay details from Greektown Casino through 2024. Plaintiff did not produce these items during discovery even though they were directly responsive to Defendant's requests for production. *See* ECF No. 53-2, PageID.2685, 2689 (RFP 13 asks for all documents relating to wage loss and other damages; RFP 27 asks for all documents reflecting pay, benefits or income received after the end of Plaintiff's employment with Defendant).

   The first *Howe* factor, the surprise to Defendant, favors Defendant. Although Plaintiff claims that Defendant should not be surprised because it has Plaintiff's tax documents which demonstrate his earnings, Defendant expected—rightly so—that Plaintiff would have produced all the financial documents he had in his possession and expected to introduce at trial in response to Defendant's clearly applicable

requests for production. *See Bentley*, 2016 WL 5867496, at *10 ("[T]he rules do not require parties to read minds."). The second factor also favors Defendant. Plaintiff's late disclosure "precludes the innocent opponent from fairly assessing, at the proper procedural point of the case," the basis for Plaintiff's claim for damages. *Silitonga v. Ky. State Univ.*, No. 3:16-CV-29-REW-EBA, 2018 WL 3969951, at *3 (E.D. Ky. Aug. 20, 2018). This is particularly true where, as here, Plaintiff's late disclosure includes bank statements and pay records that Defendant will be forced to analyze and compare to his tax returns rather than making its final preparations for trial. *Id.* at *4 ("[W]ith summary judgment resolved and trial on the horizon, [Plaintiff] improperly seek[s] to force [Defendant] to invest significant time reviewing additional documents… while [Plaintiff] would be able to actually prepare for trial."). Considering that trial looms just weeks away and given Defendant's lack of time to assess the documents, introducing these documents at trial has the potential to disrupt it, which means the third factor also favors Defendant. *See id.*

The fourth factor, importance of the evidence, favors Defendant as well. During discovery, Plaintiff produced his tax documents as those which he planned to use to establish his damages. Plaintiff even states that Defendant "knows exactly how much money Plaintiff has earned" because of his tax documents. ECF No. 59, PageID.2866. In addition, Plaintiff may testify about his damages. Thus, the importance of these documents appears to be low because they are cumulative,

29

especially considering that Plaintiff "overlooked [them] for so long." *Bisig*, 940 F.3d at 220. Finally, *Howe*'s fifth factor—Plaintiff's justification for the delay—also favors Defendant. Plaintiff offered no reason whatsoever that he did not produce these documents within the discovery period, which means the factor cuts against him. *See Trapp v. Fed. Express Corp.*, 647 F. Supp. 3d 567, 570 (E.D. Mich. 2022). "Under Rule 37(c)(1), forgiveness must be earned." *Bentley*, 2016 WL 5867496, at *11. Plaintiff "needed to give… this Court some justification for [his] delay…. This much [he] has not done." *Id.*

Considering the *Howe* factors together, they favor exclusion of these records. Therefore, Defendant's request to excuse the untimely produced bank statements and pay records is GRANTED.

*Photographs.* Plaintiff seeks to introduce photographs of his children's baptisms. ECF No. 59-3. Plaintiff did not produce these photographs in discovery even though they were responsive to Defendant's request to produce. *See* ECF No. 53-2, PageID.2685 (RFP 16 asks for all documents supporting Plaintiff's allegation that he holds a sincere religious belief that conflicts with the vaccine requirement).

The first *Howe* factor favors Defendant because Defendant expected such materials supporting Plaintiff's religious belief to be produced in response to its request for production. Although Plaintiff argues that Defendant should not be surprised by such evidence because it knows Plaintiff must prove his sincere

religious beliefs, "that itself does not show that the evidence d[oes] not surprise [Defendant]." *Silitonga*, 2018 WL 3969951, at *2. The rules "do not require parties to read minds," *Bentley*, 2016 WL 5867496, at *10, and "[p]arties do not have free rein to use at trial the universe of proof relevant to a claim without (at least) making proper discovery disclosures." *Silitonga*, 2018 WL 3969951, at *2.

The second factor, ability of Defendant to cure the surprise, favors Plaintiff. Unlike the bank records and pay details, which would require Defendant to conduct a numerical analysis, the pictures are plain and understandable on their face and would not require Defendant to expend any extra effort in trial preparation. Furthermore, Defendant can cross-examine Plaintiff at trial about the pictures if needed. *EQT Prod. Co. v. Magnum Hunter Prod., Inc.*, 768 Fed. App'x 459, 469 (6th Cir. 2019) (noting that the ability to cross examine witnesses about a late disclosure may remedy surprise). The third factor also favors Plaintiff because the introduction of the photographs will not add any complexity to the case, will take little time in trial to introduce and discuss, and because Defendant may cross examine Plaintiff about them. *See id.*

The fourth factor, importance of the evidence, favors Defendant because the photographs add little probative value to the case. Plaintiff himself may testify about his children's baptisms and the extent of his religious beliefs, and the pictures add nothing beside a visual aid for the jury. Finally, the fifth factor favors Defendant

because Plaintiff has failed to provide any explanation for his tardy production of these documents, particularly where, as Defendant points out, the photos "appear to be about ten years old." ECF No. 64, PageID.2971. "Whether [Plaintiff] reached this point by honest mistake, sheer negligence, or a desire to 'gain a tactical advantage,' the Court does not know." *Bentley*, 2016 WL 5867496, at *11.

Although the factors are mixed, the Court concludes that the *Howe* factors favor Defendant more than Plaintiff. Therefore, Defendant's request to exclude the photographs is GRANTED.

### iii.   "Public Records"

*Medical Articles.* In the parties' first JFPTO, Plaintiff indicated that he sought to introduce a myriad of medical articles and public records that discussed COVID-19 vaccines, stem cell research, the use of fetal cells in the development of the vaccines, and over the counter medications. *See* Plaintiff's Exhibits ZZZ–NNNN of the parties' first JFPTO. Defendant argued against the introduction of these documents for a variety of reasons, including that they were hearsay, irrelevant, unfairly prejudicial, confusing, misleading, and untimely produced. In response, Plaintiff attempted to refute these arguments and additionally asked the Court to take judicial notice of certain facts within these documents.

In the parties' amended JFPTO submitted to the Court on December 27, 2024, Plaintiff no longer includes these exhibits in his exhibit list. Plaintiff also did not

provide the Court with copies of these exhibits as required in the Court's December 4, 2024 scheduling order. *See* ECF No. 55. Given that Plaintiff no longer seeks to introduce these exhibits, the issue of their admissibility is now moot. As such, the Court GRANTS as moot Defendant's request to exclude these documents.

<u>*EEOC Guidance.*</u> Plaintiff seeks to introduce Guidance from the Equal Employment Opportunity Commission ("EEOC"). *See* Plaintiff's Exhibit 50 of the JFPTO. Defendant argues that this guidance is hearsay. As Plaintiff points out, however, Defendant itself also seeks to introduce EEOC Guidance. *See* Defendant's Exhibits N–O of the JFPTO. Given the unfairness of preemptively denying Plaintiff's EEOC document while potentially allowing the introduction of Defendant's, the Court will not grant exclusion at this time, and will wait until trial to determine the context in which the parties seek to introduce these various EEOC Guidance documents.[6]

Therefore, Defendant's request to exclude the EEOC Guidance is DENIED WITHOUT PREJUDICE.

---

[6] In his response to Defendant's motion, Plaintiff argues that other "public records" he seeks to introduce are admissible, such as Defendant's financial records and news articles about Defendant's revenues. However, Defendant did not object to these specific public records in its motion *in limine*, so the Court will not address Plaintiff's arguments.

**e.  Plaintiff's Motion in Limine (ECF No. 54)**

In Plaintiff's omnibus motion *in limine*, he seeks to exclude the following evidence: (1) any evidence of undue hardship outside of September 2021; (2) any evidence or argument pertaining to "public harm" that might result from a favorable jury verdict to Plaintiff; (3) any evidence or argument that places "blame" on anyone other than Defendant; (4) evidence of Defendant's "good character"; and (5) evidence of collateral sources. ECF No. 54, PageID.2768–74.

i.  Evidence of Undue Hardship Outside of September 2021

Plaintiff claims that evidence that Defendant would suffer any undue hardship by accommodating Plaintiff must be limited to Defendant's circumstances in September 2021, when it made the decision to deny Plaintiff's accommodation, because undue hardship is judged "based only on the information known to it at the time of the decision." *Kluge v. Brownsburg Cmty. Sch. Corp.*, 64 F.4th 861, 888 (7th Cir. 2023), *vacated on denial of reh'g*, No. 21-2475, 2023 WL 484324, at *1 (7th Cir. July 28, 2023). As such, Plaintiff suggests that Defendant cannot discuss any COVID-19 mitigation efforts unless it was actually making those efforts in September 2021.

The Court will not exclude this evidence. The hardships that Defendant endured prior to September 2021 provide context for its ultimate decision to deny Plaintiff an accommodation in September 2021. An employer need not "actually

experience the hardship in order for the hardship to be recognized as too great to be reasonable," *Virts v. Consol. Freightways Corp. of Del.*, 285 F.3d 508, 519 (6th Cir. 2002), and in determining undue hardship the factfinder must "take[] into account all relevant factors in the case at hand[.]" *Groff*, 600 U.S. at 470. Defendant was entitled to rely on its experience in attempting to mitigate the spread of COVID-19 in its workforce when determining whether accommodating Plaintiff would be safe or prudent under the circumstances. Indeed, Defendant's experience was information "available" to Defendant "at the time of the decision." *Kluge*, 64 F.4th at 888. Defendant is permitted to give the factfinder this context.

Therefore, Plaintiff's request to exclude evidence of Defendant's mitigation efforts prior to September 2021 is DENIED.[7]

## ii.   Public Harm

Plaintiff claims that any evidence of "public harm" that would result from a favorable jury verdict to Plaintiff, including arguments that the verdict could hurt the local economy, increase taxes and costs, or contribute to a "litigation crisis" in Michigan (among other things), should be excluded because it would encourage the jury to disregard the law and play on jurors' passions and prejudices.

---

[7] To the extent Plaintiff suggests that Defendant should be precluded from presenting evidence of undue hardship because it has failed as a matter of law to establish undue hardship, this is an inappropriate argument for a motion *in limine. See Louzon*, 718 F.3d at 561.

35

The Court finds that this is an improper use of a motion *in limine*. Motions *in limine* "aiming to cut out broad categories of evidence, or [those] that merely recapitulate the rules without any application to specific facts, should rarely be employed." *Henry v. Quicken Loans*, No. 04-cv-40346, 2011 U.S. Dist. LEXIS 174204, at *13 (E.D. Mich. Jan. 31, 2011) (quoting *Sperberg v. Goodyear Tire & Rubber Co.*, 519 F.2d 708, 712 (6th Cir. 1975)) (internal quotation marks omitted). "The better practice is to deal with questions of admissibility of evidence as they arise." *Id.* (quoting *Sperberg*, 519 F.2d at 712). In *Henry*, the court found that a motion *in limine* was too vague to be granted where it sought to categorically exclude any argument that suggested that the defendant played a role in the housing and foreclosure crisis or was involved in predatory lending. Similarly here, Plaintiff's categorical references to inadmissible arguments are better objected to and addressed during trial.

Therefore, Plaintiff's request to exclude evidence of "public harm" is DENIED WITHOUT PREJUDICE.

### iii.  Placing Fault on Anyone Else

Plaintiff argues that any evidence, reference to, or mention of the "fault" of anyone or anything other than Defendant should be excluded from trial. In support of this argument, Plaintiff states that comparative fault does not apply in employment discrimination claims, and that there is a "risk" that Defendant will

36

suggest to the jury that fault lies with third parties—specifically, government vaccine mandates, the Centers for Disease Control and Prevention, or the COVID-19 pandemic in general. ECF No. 54, PageID.2762, 2773.

The Court will deny this request for two reasons. Like with Plaintiff's request to exclude evidence of "public harm," this request is too vague and overly broad for a motion *in limine*. *See Henry*, 2011 U.S. Dist. LEXIS 174204, at *13; *EEOC v. Proctor Fin., Inc.*, 644 F. Supp. 3d 400, 413 (E.D. Mich. 2022). Furthermore, the argument that any reference to the realities of the pandemic, vaccine mandates, or government agencies is akin to imposing "comparative fault" in this case is specious.[8] Rather, such information is mere context for Defendant's undue hardship defense because, according to Defendant, these were factors Defendant considered when determining whether to grant an accommodation.

Therefore, Plaintiff's request to exclude evidence of anyone else's "fault" is DENIED.

iv.    Defendant's "Good Character"

Plaintiff argues that any evidence of Defendant's "good character" should be excluded pursuant to Federal Rule of Evidence 404(a). Plaintiff states that evidence such as Defendant's philanthropic efforts and charitable giving, along with evidence

---

[8] Comparative fault in tort negligence cases imposes individual liability for damages based on the proportionate fault of all parties. *See* 3 STUART M. SPEISER ET AL., AM. LAW OF TORTS § 13:2 (2024).

and arguments that Defendant was protecting employees and the public during the pandemic, are inadmissible under this rule.

The Court will not exclude this evidence. Plaintiff's request is vague and a mere "recapitulat[ion] of the rules" without much application to specific facts. *Henry*, 2011 U.S. Dist. LEXIS 174204, at *13; *Sperberg*, 519 F.2d at 712 ("Orders *in limine* which exclude broad categories of evidence should rarely be employed."). Moreover, Rule 404(a)(1) states that evidence of a person's character or character trait is not admissible to prove that they acted "in accordance with the character or trait." Fed. R. Evid. 404(a)(1). However, Rule 404(a)(1) does not prevent this same evidence from being used for any other purpose (assuming it does not run afoul of any other evidentiary rules). Plaintiff's request for exclusion is broadly worded to exclude all evidence of Defendant's good character regardless of the purpose for which the evidence is introduced. This request is overly broad and inconsistent with Rule 404. If Defendant seeks to introduce evidence solely for a character purpose at trial, Plaintiff may object to it then.

Therefore, Plaintiff's request to exclude evidence of Defendant's good character is DENIED WITHOUT PREJUDICE.

v.   <u>Collateral Sources</u>

Finally, Plaintiff contends that any evidence pertaining to collateral sources of money he has received or will receive should be excluded from trial, pursuant to

*Eichel v. N.Y. Cent. R.R.*, 375 U.S. 253 (1963) and *Wilcox v. Clinchfield R.R. Co.*, 747 F.2d 1059, (6th Cir. 1984). Plaintiff cites Michigan state law to define "collateral source," which includes insurance payments, employee benefits, social security benefits, worker's compensation, and Medicare benefits. MCL. 600.6303(4). In his case, Plaintiff specifically requests that evidence of unemployment benefits and medical insurance benefits be excluded.

During his deposition, Plaintiff admitted that he did not receive unemployment benefits. ECF No. 33-6, PageID.1310. Thus, unemployment is not an applicable collateral source in this case. As for medical insurance or other indemnification, Plaintiff provided the Court with no context about what medical insurance benefits or indemnification he has received, why he received them, or why he anticipates this issue will be raised in trial. To the Court's knowledge, any evidence of insurance other than unemployment benefits would be entirely unrelated to this case, and no party has included any evidence pertaining to insurance in the Joint Final Pretrial Order. Given the Court's uncertainty about the role medical insurance or indemnification plays in this case, the Court declines to rule on this issue unless it comes up in trial. *See Ind. Ins. Co.*, 326 F. Supp. 2d at 846.

Therefore, Plaintiff's request to exclude evidence of collateral sources is DENIED WITHOUT PREJUDICE.

## IV.   CONCLUSION

For the foregoing reasons, the Court concludes that Plaintiff's Motion in Limine is DENIED [#54] and Defendant's Motions in Limine [#51, #52] are DENIED. The Court concludes that Defendant's Motion in Limine [#53] is GRANTED IN PART and DENIED IN PART. Specifically:

1. Defendant's request to exclude evidence of dismissed and settled claims is GRANTED.

2. Defendant's request to exclude Rosy and Alik Yeremian as witnesses is DENIED.

3. Defendant's request to exclude Sarkis Steve Karijian, Cindi Testa, and Fred Testa as witnesses is GRANTED.

4. Defendant's request to exclude Plaintiff's bank statements and pay details (Plaintiff's Exhibits 51–56) is GRANTED.

5. Defendant's request to exclude Plaintiff's family photos (Plaintiff's Exhibit 57) is GRANTED.

6. Defendant's request to exclude medical articles about COVID-19 vaccinations, stem cell research, fetal cell research, and over-the-counter medications is GRANTED AS MOOT.

7. Defendant's request to exclude Plaintiff's EEOC Guidance (Exhibit 50) is DENIED.

**SO ORDERED.**

Dated:  December 31, 2024         /s/Gershwin A. Drain
                                                 GERSHWIN A. DRAIN
                                                 United States District Judge

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
December 31, 2024, by electronic and/or ordinary mail.
/s/ Marlena Williams
Case Manager
