# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

HRATCH YEREMIAN,

    Plaintiff,       Case No. 2:22-cv-12978

v.             Hon. Gershwin A. Drain
              Mag. Judge David R. Grand

MGM GRAND CASINO,

    Defendant.

---

| | |
|---|---|
| HURWITZ LAW PLLC | JACKSON LEWIS P.C. |
| Noah S. Hurwitz (P74063) | Allan S. Rubin (P44420) |
| Brendan J. Childress (P85638) | Elyse K. Culberson (P82132) |
| Attorneys for Plaintiff | Benjamin D. Wu (P85635) |
| 340 Beakes St., Suite 125 | Attorneys for Defendant |
| Ann Arbor, MI 48104 | 2000 Town Center, Suite 1650 |
| (844) 487-9489 | Southfield, MI 48075 |
| noah@hurwitzlaw.com | (248) 936-1900 |
| brendan@hurwitzlaw.com | allan.rubin@jacksonlewis.com |
| | elyse.culberson@jacksonlewis.com |
| MARKO LAW, PLLC | benjamin.wu@jacksonlewis.com |
| Jonathan R. Marko (P72450) | |
| Michael L. Jones (P85223) | |
| Attorneys for Plaintiff | |
| 220 W. Congress, Fourth Floor | |
| Detroit, MI 48226 | |
| (313) 777-7526 | |
| jon@markolaw.com | |
| michael@markolaw.com | |

---

## DEFENDANT'S TRIAL BRIEF

## TABLE OF CONTENTS

INDEX OF AUTHORITIES ........................................................................ ii

I.    INTRODUCTION ....................................................................1

II.   FACTUAL BACKGROUND ...................................................2

      A.    Plaintiff's Employment in MGM Grand's Warehouse...........................2

      B.    The Impact of COVID-19 on MGM Grand's Operations....................3

      C.    MGM Grand's Vaccine Policy.................................................3

      D.    Plaintiff's Request For Religious Accommodation.............................4

      E.    Accommodating Plaintiff Posed An Undue Hardship On MGM Grand. ....................................................................6

      F.    Plaintiff's Termination For Failing To Comply With The Vaccine Policy. ..................................................................10

III.  LEGAL ARGUMENT ............................................................10

      A.    Plaintiff Cannot Meet His Burden to Establish that He Holds a Sincere Religious Belief that Conflicts With an Employment Requirement ......................................................10

      B.    MGM Grand Could Not Reasonably Accommodate Plaintiff Without Undue Hardship...............................................11

      C.    Plaintiff's Claims are Barred Because MGM Grand Relied Upon EEOC Guidance and the Applicable Law at the Time in Good Faith .......................................................15

      D.    Plaintiff's Economic Damages are Minimal at Best ...........................17

IV.  CONCLUSION......................................................................19

# INDEX OF AUTHORITIES

**Page(s)**

**Cases**

*Albemarle Paper Co. v. Moody*,
422 U.S. 405 (1975) ........................................................................................16

*Arban v. W. Pub. Corp.*,
345 F.3d 390 (6th Cir. 2003) .........................................................................19

*Aukamp-Corcoran v. Lancaster Gen. Hosp.*,
No. 19-5734, 2022 U.S. Dist. LEXIS 29355 (E.D. Pa. Feb. 18,
2022) ...............................................................................................................13

*Barrington v. United Airlines, Inc.*,
566 F.Supp.3d 1102 (D. Colo. 2021)..............................................................13

*Bordeaux v. Lions Gate Ent., Inc.*,
No. 2:22-cv-04244 2023 U.S. Dist. LEXIS 209626 (C.D. Calif.
Nov. 21, 2023) ................................................................................................13

*EEOC v. Monarch Machine Tool Co.*,
737 F.2d 1444 (6th Cir. 1980) ........................................................................16

*Groff v. DeJoy*,
600 U.S. 447 (2023)..................................................................................12, 13

*Isaac v. Exec. Office of Health and Human Servs.*,
No. 22-11745-RGC, 2023 U.S. Dist. LEXIS 219788 (D. Mass.
Dec. 11, 2023).................................................................................................13

*Kelmendi v. Detroit Bd. of Educ.*,
No. 12-14949, 2017 U.S. Dist. LEXIS 63652 (E.D. Mich. Apr. 27,
2017) ...............................................................................................................18

*MacDonald v. Or. Health & Sci. Univ.*,
No. 3:22-cv-01942, 2024 U.S. Dist. LEXIS 118542 (D. Or. July 5,
2024) ...............................................................................................................12

*O'Hailpin v. Hawaiian Airlines, Inc.*,
583 F. Supp. 3d 1294 (D. Haw. 2022)............................................................13

*Plott v. General Motors Corp., Packard Elec. Div.*,
    71 F.3d 1190 ....................................................................................................16

*Roush v. KFC Nat'l Mgmt. Co.*,
    10 F.3d 392 (6th Cir. 1993) ..............................................................................18

**Statutes**

42 U.S.C § 2000e-12(b) ...................................................................................16, 17

National Labor Relations Act ...................................................................................4

# I. **INTRODUCTION**

Plaintiff Hratch Yeremian was terminated from his employment as the warehouse manager for MGM Grand Casino Detroit ("MGM Grand") after he chose not to receive the COVID-19 vaccine, thus violating MGM Grand's vaccination policy, which required salaried employees such as Plaintiff to be vaccinated against COVID-19 as a condition of their employment. MGM Grand applied its policy equally and without regard to an employee's religion or lack thereof. Although MGM Grand accepted Plaintiff's claim of religious beliefs as sincere, Plaintiff gave varying answers as to why he was requesting a religious accommodation. Accordingly, Plaintiff cannot meet his burden to prove that he holds a sincere religious belief that conflicts with MGM Grand's vaccine policy. Even if he were able to meet that burden, MGM Grand could not accommodate Plaintiff's requested accommodation without undue hardship to the ability of the property to operate, as well as posing an increased health and safety risk. Finally, because the law at the time MGM Grand denied Plaintiff's accommodation request only required a *de minimis* burden in the undue hardship analysis, MGM Grand relied on then-applicable EEOC regulations and guidance in good faith.

## II.    FACTUAL BACKGROUND

**A.    Plaintiff's Employment in MGM Grand's Warehouse.**

MGM Grand is a resort casino in Detroit featuring gaming, a hotel, dining, a spa, and other attractions. In 2021, it employed nearly 3,000 people. From 2019 through the time of his discharge, Plaintiff was the Warehouse Manager.

The Warehouse is vital to MGM Grand's operations. All mail and essentially all inventory, including all personal protective equipment ("PPE") for the entire property – including the gaming floor, hotel, spa, dining, and reception – is processed through the Warehouse where it is then distributed to the appropriate area of the property. As the sole Warehouse Manager, Plaintiff was the top employee in the Warehouse and was responsible for managing the Warehouse along with accounts payable, inventory control, and purchasing. He was responsible for buying all goods, products, and materials for MGM Grand; inventorying items as they entered and exited the Warehouse; and distributing all inventory to the various departments across the property.

In his role, Plaintiff was a leader of people. He managed about 20-25 hourly Warehouse employees and oversaw all warehouse operations to ensure inventory was distributed to all departments so the property could operate. If the warehouse was not properly operating, Plaintiff admitted it would be a "disaster" for MGM Grand's operations.

2

**B.      The Impact of COVID-19 on MGM Grand's Operations.**

In 2020, the world was struck by a global pandemic resulting in more than one hundred million cases and over one million deaths in the United States. On March 16, 2020, the State of Michigan required that MGM Grand to shut down. After the shutdown, Plaintiff worked in the Warehouse to ensure that essential inventory, such as water and hand sanitizer, were processed and distributed throughout the property. In fact, all Warehouse employees, except Plaintiff, were laid off for about five months. The casino, hotel, and restaurants were closed for five months.

When MGM Grand was permitted to reopen in August of 2020, it was at only 15% capacity, and its ability to remain open was tied to infection rates. To reopen, MGM Grand had to implement extensive safety measures for employees and guests. But due to significant surges in October of 2020, MGM Grand had to again shut down for another 33 days between November and December 2020. It also had to lay off 1,570 employees. MGM Grand's revenues were completely cut off for least six months in 2020. MGM Grand's revenue for 2020 was a mere 20% of its normal annual revenue.

**C.      MGM Grand's Vaccine Policy.**

MGM Grand was committed to doing its part to curb the spread of COVID-19 and help counter the alarming trends in cases, hospitalizations, and deaths.

Relying on information available suggesting vaccination was the best way to protect against the deadly COVID-19 virus, MGM Grand announced, on August 16, 2021, that it would require vaccination against COVID-19 as a condition of employment for all salaried employees and new hires. MGM Grand immediately implemented its Mandatory COVID-19 Vaccination Policy for Salaried Employees and New Hires ("Vaccine Policy"). Under the Vaccine Policy, all salaried employees and new hires were required to be vaccinated by October 15, 2021. Impacted employees were permitted to request an accommodation and were given instructions on how to do so. The Vaccine Policy applied to all impacted employees, regardless of religion or membership in any protected class. It did not apply to employees represented by the Detroit Casino Council ("DCC")[1], however, because under the National Labor Relations Act, MGM Grand lacked the authority to unilaterally implement and apply the policy on union represented workers and it could not secure and agreement with DCC to do so.

## D.   Plaintiff's Request For Religious Accommodation.

Later MGM Grand sent a letter to Plaintiff because he had not submitted proof of vaccination. Plaintiff knew he had to be fully vaccinated by the October 15 deadline and had until September 24 to request an accommodation. He also knew if

---

[1] Approximately 80% of MGM Grand's workforce.

he failed to become vaccinated or receive an accommodation, he would be terminated.

On September 16, 2021, Plaintiff requested a religious accommodation from the Vaccine Policy (the "Request"). In his Request, Plaintiff stated, "I have a sincere religious belief and oppose as a matter of religious conviction to be inoculated with the vaccine against my will." By signing the Request, Plaintiff affirmed that the information he provided was complete and accurate. On September 23, 2021, Plaintiff provided additional information at the request of MGM Grand. Despite previously affirming that the information he provided was complete and accurate, Plaintiff stated a different reason not included in his original Request. Here, when asked to explain the conflict between his alleged religious belief and the Vaccine Policy, he stated, "The conflict is that all of the currently available COVID-19 vaccines used cell lines originating from aborted children in their manufacturing or testing." Plaintiff also stated that he "would be morally held accountable by God" if he received the vaccine and his "medical care would be affected if any medication or vaccine contain cell lines originated from aborted children."

Yet at his deposition, when asked about his objections to receiving the vaccine and how it violated his faith (Christianity), Plaintiff stated that he "didn't want to be coerced in getting inoculated with any foreign substance" because the vaccine "had no yearly testing" and "it's a guess." When pressed as to how this aligns with his

5

religion, Plaintiff stated that "no matter what happens, it's in the hands of God" and his belief is "not to be coerced on injecting any different substance in [his] body." Indeed, Plaintiff does not believe in medicine, but admits he never informed MGM Grand of any religious belief that prevented him from taking medicine.

Plaintiff also admits that his purported objection to fetal cells was not included in his original Request, and he never informed MGM Grand of his belief that his "body is [his] temple." However, Plaintiff admitted he does not know whether the COVID-19 vaccine is manufactured with fetal cells. Instead, he relied on websites such as X (formerly Twitter) and Dr. Peter McCullough (who he has never met or treated with) to form his opinion about the COVID-19 vaccine and for the language to use in his Request. Notably, and even further undermining any alleged conflict, Plaintiff admits that his daughter has received stem cell treatments for a medical condition, but does not know if the stem cell treatment came from fetal cells.[2]

E. **Accommodating Plaintiff Posed An Undue Hardship On MGM Grand.**

On September 24, 2021, MGM Grand notified Plaintiff that his Request was denied. MGM Grand noted that there were objective reasons to question the sincerity of Plaintiff's stated religious belief and it could not determine that his objection to

---

[2] Plaintiff stated that he believes his daughter's medical condition was caused by an adverse reaction to a vaccine. But Plaintiff admits that no licensed medical provider has ever told him that. This Court has granted MGM Grand's Motion in Limine as to the causation of Plaintiff's daughter's medical condition. (ECF No. 69, PageID.3605).

the Vaccine Policy was based on a sincerely held religious belief. Yet MGM Grand assumed, without conceding, that Plaintiff could demonstrate a sincerely held religious belief that conflicted with MGM Grand's vaccine policy, but ultimately determined that he could not be accommodated because allowing him to remain unvaccinated would pose an undue hardship. In relevant part, the letter stated:

> You are MGM Grand Detroit's Warehouse Manager. You are a leader to your team. Your position requires you to work on property and provide continuous oversight of numerous warehouse employees and activities in the warehouse. You cannot perform all of these essential functions of your job remotely. Nor are mitigation measures such as face masks and social distancing feasible. You work closely and regularly with many employees as well as with third-party truck/delivery drivers and there is no current mask mandate in Detroit. In such an environment, social distancing, face masks and other similar mitigation measures will not be effective and will interfere with your job duties because of your need to interact and communicate with multiple individuals in places where and at times when masking and/or social distancing are not possible. Regular COVID-19 testing in lieu of vaccination, masks, or distancing also would not be equivalent protection for our employees, guests, and customers due to the gaps in time between tests.

MGM Grand relied on available information from the CDC and the federal, state, and local government and considered several factors in relation to Plaintiff's position, including the health and safety risks and operational and economic costs. As the decisionmaker explained:

> [T]here are several factors. There's [the] health and safety factor. At the time, people were getting sick, people were getting hospitalized, people were dying. As a responsible operator, we have an obligation to create a safe and healthy work environment for our employees, their families, and the communities in which we operate. So, from a health and safety

7

perspective and at the time when the vaccine became available, it really was the gold star as far as…safety controls go to minimizing infection rates, lowering severity of those particular sicknesses, lowering hospitalizations, and slowing down the death rate that was occurring at the time. So, first and foremost, protection of our employees, including…Plaintiff himself, as well as those who he worked around. By not being vaccinated, he works in contact on property, his job requires him to be on property, and to supervise and oversee a team of around…20, 25 people. In addition, he would have contact with delivery drivers and vendors who were coming in, some of whom…at the time were not required to wear masks, so there would be an exposure factor if not vaccinated or exposed or infected. His quarantine time would be much longer than somebody who was vaccinated who had a smaller quarantine level.

And the manager of a small, but very vital department, our warehouse at the time, being one of our key departments, especially during what is arguably…one of the worst supply chain issues we've probably faced, the warehouse intake and his position in particular is responsible for ensuring that inventory is flowing in and inventory…literally everything on the property, so from food to drinks to cleaning products to toilet paper to gloves to all the things that we needed to ensure our other safety protocols as part of his job is to monitor, audit those levels, basically responsible for all the flow of those goods and services to our entire department. So if he were to be sick and go out[,] one, his quarantine would be longer, two, god forbid, it may be more severe without the vaccine, so he may be out for even longer than that.

It's not as though we have a lot of managers who were on-call, …it's not like a guest room attendant where we have hundreds of people on-call. We only have one manager, so if he were to be out we would have no one to lead that team. And rather than other employees who may have contact with one or two employees during their shift, as a manager he's, in theory, going to have contact with almost everybody, if not everybody, daily. So if he were to be infected or others were to be infected[,] that could trickle through the entire department.

And remember, at the time, if one individual got sick, or instance, at a restaurant and that spread through the other work force, we would close the restaurant. We wouldn't have workers. And that simply isn't

> something that we could manage at the warehouse. So there were
> certainly economic factors, there were operational factors in order to
> continue the flow and efficiency. In addition, we were tied to…a lot of
> restrictions, hotel operations, occupancy rates, things like that were tied
> to vaccinations overall at the State level. And again, during this time, it
> was around the time of the Delta surge, we were also trying not to get
> re-shut down,…so we needed to employ all of the safety control
> measures that were possible, and the vaccine was one of the gold star,
> at the time, measures, safety measures to implement to ensure
> our…employees were safe on property and that our operations could
> maintain their efficiency and continue to keep the doors open and
> hopefully expand occupancy.

Thus, MGM Grand considered its mission to create a safe and healthy environment for its employees (including Plaintiff), their families, and the overall community, and determined – based on available information that the vaccine was the gold star in minimizing infection rates, severity of illness, hospitalization, and deaths – that vaccination was required.[3] As Warehouse Manager, Plaintiff was required to work in-person to oversee the Warehouse. He had daily contact with almost everyone in the department, as well as third parties. If Plaintiff was exposed to COVID-19 or became infected, he would have longer quarantine and isolation requirements, and by remaining unvaccinated there was a risk of the spread of COVID-19 through the entire department, which posed a substantial risk to MGM Grand's mission to

---

[3] At that time, the vaccine was considered an elimination safety control, and Plaintiff could not be accommodated with lesser safety controls, such as wearing a mask, testing, and social distancing, as those were the lowest levels of safety measures.

provide a safe and health work environment, keep its doors open, and expand occupancy.

MGM Grand also considered operational and economic factors. Plaintiff was the only manager of a vital department. If Plaintiff were to be exposed to or contract COVID-19 while unvaccinated, his quarantine time would have been longer than someone who was vaccinated. Because Plaintiff was the only manager and there was no one to run the Warehouse in his absence, the Warehouse would not be able to operate, which would be a disaster to MGM Grand's overall operations and have devastating economic consequences. Based on these factors, MGM Grand determined that allowing Plaintiff to remain unvaccinated posed a substantial hardship in the overall context of its business.

**F.      Plaintiff's Termination For Failing To Comply With The Vaccine Policy.**

Plaintiff's employment was terminated effective October 16, 2021, for failing to comply with the Vaccine Policy. MGM Grand's concerns applied regardless of Plaintiff's religion, and its decision had nothing to do with Plaintiff's religion.

### III.      <u>LEGAL ARGUMENT</u>

**A.      Plaintiff Cannot Meet His Burden to Establish that He Holds a Sincere Religious Belief that Conflicts With an Employment Requirement**

Plaintiff will not be able to establish at trial through a preponderance of the evidence that he held a sincere religious belief that conflicted with MGM Grand's

vaccine policy. Plaintiff initially stated that the reason he did not want to become vaccinated was because he did not want "to be inoculated with the vaccine *against my will*." He confirmed this in his deposition testimony when he stated that his sincere religious belief was "not to be coerced on injecting any different substance in my body." In fact, Plaintiff did not believe in modern medicine at all. When he or his family needs medical attention, he sees a chiropractor. And he treats all medical problems with unproven natural remedies.

Additionally, although Plaintiff attempts to challenge a fetal cell connection to the vaccine, he admits he does not know whether fetal cells were used in the vaccine. Nonetheless, Plaintiff will be unable to establish a religious observance or practice that conflicted with the vaccine. Rather, the evidence will show that Plaintiff's objection to MGM Grand's vaccine policy as well as the vaccine itself was based on his moral, medical, or other personal beliefs, rather than a sincerely held religious belief. Plaintiff will be unable to meet his burden to show a sincerely held religious belief that conflicted with MGM Grand's vaccine policy.

**B.   MGM Grand Could Not Reasonably Accommodate Plaintiff Without Undue Hardship**

Even if Plaintiff could establish that he had a sincerely held religious belief that conflicted with the Vaccine Policy (he cannot) Plaintiff's religious accommodation claim still fails as accommodating Plaintiff would have posed an undue hardship. Under Title VII, employers are not required to accommodate

11

employees if doing so would pose an undue hardship. *Groff v. DeJoy*, 600 U.S. 447, 468, 470 (2023). In determining whether an undue hardship exists, courts apply the test in a manner that considers all relevant factors in the case, including the particular accommodations at issue and their practical impact.  *Id*. at 470-471.[4] Following *Groff*, courts continue to consider both economic and noneconomic costs when conducting the undue hardship analysis.

Against this backdrop, MGM Grand was not required to grant Plaintiff's request to remain unvaccinated because doing so posed an undue hardship. In making this determination, MGM Grand considered both non-economic and economic factors and the information available at that time. Plaintiff's position required him to work in-person, manage his team, oversee Warehouse operations, and have face-to-face interactions with employees and third parties. Plaintiff admits that if the warehouse was not functioning properly, it would be a disaster for the entire property, since the warehouse was essential for the property's functioning. MGM Grand needed to ensure that the warehouse manager—the sole person in charge of the warehouse, would be able to consistently perform their job duties with

---

[4] Importantly, undue hardship is evaluated under the circumstances at the time of the employee's request. *MacDonald v. Or. Health & Sci. Univ.*, No. 3:22-cv-01942, 2024 U.S. Dist. LEXIS 118542, at *39-40 (D. Or. July 5, 2024) ("Defendant's affirmative defense of undue hardship rises and falls not on the efficacy of the vaccine, but on Defendant's assessment of undue hardship at the time it denied Plaintiff's exemption and terminated Plaintiff for refusing to get the COVID-19 vaccine in 2021.").

minimal risk of getting severely ill with COVID-19 or needing to constantly quarantine because of exposure to COVID-19.

MGM Grand relied upon available information that vaccination was the gold star in minimizing infection, hospitalization, and death rates at a time when people were rapidly contracting COVID-19, being hospitalized, and dying from the virus. Based on that information, MGM Grand determined that allowing Plaintiff to remain unvaccinated risked not only his own health and safety, but also that of others, and jeopardized MGM Grand's mission to provide a safe and healthy environment to its employees, their families, and the community. Increased safety risks have long been determined to amount to undue hardship, which courts have confirmed after *Groff*, including in the vaccine context. *See, e.g.*, *Bordeaux v. Lions Gate Ent., Inc*., No. 2:22-cv-04244 2023 U.S. Dist. LEXIS 209626, *34-37 (C.D. Calif. Nov. 21, 2023) (finding undue hardship: "Accommodating Plaintiff's exemption request would have put the lives of her fellow cast and crew members in danger…[and] [i]n and of itself, this safety risk constitutes an undue hardship").[5]

---

[5] *See also Aukamp-Corcoran v. Lancaster Gen. Hosp.*, No. 19-5734, 2022 U.S. Dist. LEXIS 29355, *6 (E.D. Pa. Feb. 18, 2022)(considering the risk of unvaccinated Plaintiff getting others sick); *O'Hailpin v. Hawaiian Airlines, Inc.*, 583 F. Supp. 3d 1294, 1309-10 (D. Haw. 2022) (considering the "increased risk that unvaccinated employees in close quarters pose to other employees and passengers"); *Barrington v. United Airlines, Inc.*, 566 F.Supp.3d 1102, 1109 (D. Colo. 2021) (considering risk of unvaccinated employee getting others sick when deciding Title VII undue hardship); *Isaac v. Exec. Office of Health and Human Servs.*, No. 22-11745-RGC,

Operational and economic costs also drove MGM Grand's determination. In addition to providing a safe and healthy environment, MGM Grand's mission was to stay open and expand occupancy. This required maintaining the flow and efficiency in the Warehouse – MGM Grand's most vital department – which was not possible in Plaintiff's absence. MGM Grand was not required to accommodate Plaintiff by allowing him to remain unvaccinated if doing so risked operations of the entire property.

For these reasons, MGM Grand could not accommodate Plaintiff's request without undue hardship based on the overall context of its business. Again, while Plaintiff may disagree with the effectiveness of the vaccine, an employer's claim of undue hardship is evaluated under circumstances at the time of the employee's request – not on information that an employer may receive after the evaluation is conducted. Plaintiff may argue that MGM Grand could have permitted him to wear a mask, social distance, and submit to testing in lieu of receiving the vaccine, but this argument is unavailing. The CDC guidance in the Fall of 2021 (when Plaintiff's request was considered) made clear that the use of masks and testing were not as effective as the vaccine. Indeed, under CDC guidance, vaccinated employees exposed to COVID-19 had no quarantine or isolation requirements, whereas

---

2023 U.S. Dist. LEXIS 219788 (D. Mass. Dec. 11, 2023) (courts across the country have found that higher risk of transmitting disease constitutes undue hardship).

unvaccinated employees had to quarantine for 5 days. And when Plaintiff's request was evaluated, masking and testing  were the lowest level of administrative safety controls. Yet MGM Grand still considered these alternatives with respect to Plaintiff but determined that these options were not feasible given the specific requirements of his position and the risk to MGM Grand's overall mission of providing a safe and healthy environment and keeping its doors open. In short, the evidence will show that MGM Grand could not have allowed Plaintiff to remain unvaccinated, thus putting himself at risk of continually needing to quarantine or be out of work sick, as well as endangering the health and safety of MGM Grand's guests and employees.

C.   **Plaintiff's Claims are Barred Because MGM Grand Relied Upon EEOC Guidance and the Applicable Law at the Time in Good Faith**

At trial, the evidence will show that MGM Grand engaged in good faith efforts to comply with Title VII. At the time MGM Grand implemented its vaccine policy and denied Plaintiff's request for religious accommodation, MGM Grand relied in good faith on EEOC guidance at the time regarding the treatment of religious accommodation requests as well as the governing law on undue hardship. Under EEOC guidance applicable at the time, an employer could assert undue hardship to justify a refusal to accommodate an employee's request for religious exemption if the accommodation would require "more than a *de minimis* cost." Thus, Plaintiffs

claims are entirely precluded by 42 U.S.C § 2000e-12(b).[6] *See also Albemarle Paper Co. v. Moody*, 422 U.S. 405, 423 n.17 (1975) ("Title VII itself recognizes a complete, but very narrow, immunity for employers conduct shown to have been undertaken "in good faith, in conformity with, and in reliance on any written interpretation or opinion of the [Equal Employment Opportunity] Commission. 42 U.S.C. § 2000e-12(b). It is not for the courts to upset this legislative choice to recognize only a narrowly defined "good faith" defense."); *Plott v. General Motors Corp., Packard Elec. Div.*, 71 F.3d 1190, 1194 ("This section insulates employers from liability for decisions made in reliance on an EEOC opinion"); *EEOC v. Monarch Machine Tool Co.*, 737 F.2d 1444, 1451 n.17 (6th Cir. 1980) (same).

Dana Howell, MGM Grand's decision-maker who reviewed Plaintiff's request to be exempt from the vaccine policy, relied on applicable EEOC guidance—including specific guidance from the EEOC on evaluating employees' religious

---

[6] 42 U.S.C. §2000e-12(b) provides in relevant part: In any action or proceeding based on any alleged unlawful employment practice, no person shall be subject to any liability … or on account of (1) the commission by such person of an unlawful employment practice if he pleads and proves that the act or omission complained of was in good faith, in conformity with, and in reliance on any written interpretation or opinion of the Commission, or  … Such a defense, if established, shall be a bar to the action or proceeding, notwithstanding that (A) after such act or omission, such interpretation or opinion is modified or rescinded or is determined by judicial authority to be invalid or of no legal effect, or (B) after publishing or filing the description and annual reports, such publication or filing is determined by judicial authority not to be in conformity with the requirements of this subchapter.

objections to mandatory vaccination policies—in determining that MGM Grand could not grant Plaintiff's requested accommodation without undue hardship. EEOC guidance at the time provided that the undue hardship analysis must be made on a case-by-case basis considering the particular factual context of the case, and that the employer should demonstrate that the accommodation would require to "bear more than a *de minimis* cost." Ms. Howell conducted such a case-by-case analysis and determined—in good faith—that MGM Grand could not accommodate Plaintiff's request without undue hardship to its business. Thus, Plaintiff's claims are barred by 42 U.S.C. §2000e-12(b).

But even if not barred, MGM Grand's good faith reliance on the EEOC guidance and other governmental rules, regulations, and guidance prevents any finding of oppression, malice, or reckless indifference. MGM Grand's good faith reliance renders an award of punitive damages unjustified and MGM Grand anticipates seeking a directed verdict as to all claims, including punitive damages.

### D.     Plaintiff's Economic Damages are Minimal at Best

The evidence will also show that even if MGM Grand were to be found liable, Plaintiff has suffered little to no economic damages. With respect to emotional distress, Plaintiff never sought any mental health treatment because of his termination, and the evidence will show that Plaintiff appeared to be at peace with MGM Grand's decision to terminate his employment. With respect to economic

damages, Plaintiff obtained new employment in March 2022 in a substantially similar role and making a similar salary as he did with MGM Grand. (ECF No. 65, PageID.2977). Plaintiff was only unemployed for a period of approximately five months (October 2021 – March 2022). A week later, he began working at Greektown Casino with a higher salary than at MGM Grand. (*Id.*) Because any backpay award under Title VII be reduced by interim earnings, Plaintiff's back pay damages are cut off as of March 2022. His lost wages are around $33,000.  Similarly, as to front pay, Plaintiff earned more at Greektown since the onset of his employment and received substantially the same benefits (*Id.)* And he is still employed at Greektown Casino and makes an annual salary of $120,000—significantly more than he made at MGM Grand. (*Id.*).

Because Plaintiff has fully mitigated his damages by finding comparable employment, any award of front pay is inappropriate. Defendant anticipates seeking a directed verdict as to front pay because trial courts play a gatekeeping role with front pay and should dispense any possibility of a front pay award before a jury reaches a finding on liability. *Kelmendi v. Detroit Bd. of Educ.*, No. 12-14949, 2017 U.S. Dist. LEXIS 63652, at *25 (E.D. Mich. Apr. 27, 2017); *Roush v. KFC Nat'l Mgmt. Co.*, 10 F.3d 392, 398 (6th Cir. 1993) (a district court's determination of whether an award of front pay is appropriate, and its articulation of the reasons why such an award is or is not appropriate, must ordinarily precede its submission of the

18

case to the jury). The initial determination of the propriety of an award of front pay is a matter for the court. *Arban v. W. Pub. Corp.*, 345 F.3d 390, 406 (6th Cir. 2003).

## IV.   CONCLUSION

MGM Grand believes that the evidence adduced in this case will demonstrate first that Plaintiff has failed to meet his burden to demonstrate that he has a sincerely held religious belief that conflicts with MGM Grand's vaccine policy, and second that even if Plaintiff were able to meet this burden, MGM Grand is able to demonstrate that it would suffer undue hardship if it were to allow Plaintiff to remain unvaccinated. And even if the jury were to find MGM Grand liable under Title VII, Plaintiff is not entitled to punitive damages because MGM Grand attempted in good faith to comply with Title VII, and Plaintiff's economic damages are cut off as a matter of law.

Respectfully submitted,

JACKSON LEWIS P.C.

/s/Allan S. Rubin
Allan S. Rubin (P44420)
Elyse K. Culberson (P82132)
Benjamin D. Wu (P85635)
Attorneys for Defendant
2000 Town Center, Suite 1650
Southfield, MI 48075
(248) 936-1900
allan.rubin@jacksonlewis.com
elyse.culberson@jacksonlewis.com
benjamin.wu@jacksonlewis.com

Dated: January 6, 2024

19

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on this 6th day of January 2025, he or his assistant did file this document using the CM/ECF system which will send notice of its filing to all counsel of record.

/s/  Allan S. Rubin
Allan S. Rubin

4925-2260-5324, v. 3