UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HRATCH YEREMIAN,

          Plaintiff,

                                  Case No.: 2:22-cv-12978

v.                                  Hon. Gershwin A. Drain

MGM GRAND CASINO,

          Defendant.

_____/

## OPINION AND ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR ATTORNEY FEES AND COSTS [ECF No. 101], DENYING PLAINTIFF'S MOTION TO COMPEL DEFENDANT'S BILLING RECORDS [ECF No. 105], AND DENYING PLAINTIFF'S MOTION TO COMPEL DEFENDANT'S RESPONSES TO REQUEST FOR PRODUCTION [ECF No. 109]

## I.    INTRODUCTION

Plaintiff Hratch Yeremian brought this case against his former employer, Defendant MGM Grand Casino, when Defendant terminated Plaintiff's employment after he refused to receive the COVID-19 vaccine due to his purported religious beliefs. The case proceeded to trial in January 2025, where the jury found in favor of Plaintiff and awarded him $133,000 in economic and noneconomic damages. Presently before the Court are Plaintiff's Motion for Attorney Fees and Costs, Plaintiff's Motion to Compel Defendant's Billing Records, and Plaintiff's Motion to

1

Compel Defendant's Responses to Plaintiff's Requests for Production Regarding Defendant's Billing Records.

The Court concludes that oral argument will not aid in the disposition of these motions and will determine them on the briefs. *See* E.D. Mich. L.R. 7.1(f)(2). For the following reasons, Plaintiff's Motion for Attorney Fees and Costs [ECF No. 101] is GRANTED IN PART, Plaintiff's Motion to Compel Defendant's Billing Records [ECF No. 105] is DENIED, and Plaintiff's Motion to Compel Defendant's Responses to Plaintiff's Requests for Production Regarding Defendant's Billing Records [ECF No. 109] is DENIED.

## II.    BACKGROUND

Plaintiff was a longtime employee of Defendant, working various roles in the company since June 1999. ECF No. 33, PageID.1200. In August 2021, during the COVID-19 pandemic, Defendant announced a mandatory COVID-19 vaccination policy for its salaried and newly hired employees, which included Plaintiff. ECF No. 34-10. Defendant informed its employees that absent an accommodation approved by management, employees may be subject to termination for failing to comply with the policy. ECF No. 34-11. Plaintiff, who identifies as an Orthodox Apostolic Christian, submitted a religious accommodation request to Defendant based on his religious objections to the vaccine. ECF No. 33-6, PageID.1289; ECF No. 33-7; ECF No. 33-10. Defendant denied Plaintiff's accommodation. ECF No. 34-15. When

2

Plaintiff refused to receive the vaccine, Defendant terminated his employment. ECF No. 33-6, PageID.1310.

Represented by attorneys Noah Hurwitz and Brendan Childress of Hurwitz Law PLLC, Plaintiff and his co-worker, Bryant Brown—who was also fired for refusing to receive the COVID-19 vaccine—filed the instant action against Defendant. Plaintiff and Brown brought claims for failure to accommodate their religion under Title VII, disparate treatment discrimination under Title VII, and disparate treatment religious discrimination under Michigan law (the Elliot-Larsen Civil Rights Act). *See* ECF No. 11, PageID.109–14.[1] After the close of discovery, the parties stipulated to the dismissal of Brown from the case, leaving only Plaintiff remaining. *See* ECF No. 32.

Thereafter, the Court adjudicated the parties' motions for summary judgment. The Court granted Defendant's motion as to Plaintiff's claims for disparate treatment discrimination under Title VII and the Elliot-Larsen Civil Rights Act, denied Defendant's motion as to Plaintiff's failure to accommodate claim, and denied Plaintiff's motion entirely. ECF No. 45, PageID.2482. Thus, the Court only permitted Plaintiff's failure to accommodate claim under Title VII to proceed to trial. *Id.* After the Court rendered its decision on the parties' motions for summary

---

[1] Individually, Brown also brought a claim under the Americans with Disabilities Act. *See* ECF No. 8, PageID.114–15.

judgment, Defendant offered Plaintiff $150,000 to settle the case, which Plaintiff rejected. ECF No. 104, PageID.5469. Then Defendant provided Plaintiff with an Offer of Judgment for $130,000, to which Plaintiff never responded. *Id.*; *see also* ECF No. 104-3. The same day, attorney Michael Jones of Marko Law, PLLC appeared on behalf of Plaintiff. *See* ECF No. 48.

Trial began on January 7, 2025, and lasted seven days. Mr. Jones tried the case from beginning to end as lead trial counsel, while Mr. Hurwitz and Mr. Childress were in supportive roles. Plaintiff asked the jury for a total of $7,533,000 in damages, consisting of $33,000 in back pay (a stipulated amount), $500,000 in non-economic damages, and $7 million in punitive damages. ECF No. 104, PageID.5469–70. Ultimately, the jury awarded $33,000 in back pay, $100,000 in non-economic damages, and no punitive damages. *See* ECF No. 91.

Presently before the Court are Plaintiff's Motion for Attorney Fees and Costs, Plaintiff's Motion to Compel Defendant's Billing Records, and Plaintiff's Motion to Compel Defendant's Responses to Plaintiff's Requests for Production. Plaintiff's Motion for Attorney Fees seeks fees as the prevailing party to the lawsuit for the efforts of Mr. Hurwitz, Mr. Childress, and Mr. Jones. *See generally* ECF No. 101. Defendant opposes Plaintiff's motion, arguing in part that Plaintiff's requested hourly rates are unreasonable. ECF No. 104, PageID.5475–78.

Because of Defendant's argument that Plaintiff's counsel's hourly rates are unreasonable, Plaintiff served[2] a subpoena on defense counsel for their billing records, in order to compare the billing rates of the attorneys on either side and determine the reasonableness of Plaintiff's rates. ECF No. 105, PageID.5614. Defendant objected to the subpoena, and Plaintiff subsequently filed his first Motion to Compel, which Defendant opposes.

Thereafter, Plaintiff served Defendant with a Request for Production of Documents Regarding Defendant's Billing Records, which seeks the same information as the subpoena. ECF No. 109, PageID.5973. Defendant objected to the request, and Plaintiff subsequently filed his second Motion to Compel, which Defendant also opposes.

### III.   LAW & ANALYSIS

#### A. Attorney Fees

Plaintiff requests a total of $434,130 in attorney fees and $5,222.39 in costs as the prevailing party to his lawsuit under Title VII. Plaintiff requests $500 per hour for Mr. Hurwitz, $500 per hour for Mr. Jones, $300 per hour for Mr. Childress, $100 per hour for law clerk Katherine McDaniel, and $100 per hour for paralegal Devynn Stepowski. ECF No. 101, PageID.5269–72. Individually, Plaintiff contends that Mr.

---

[2] Defendant argues that this subpoena was not properly served. *See* ECF No. 107, PageID.5770–72.

Hurwitz spent 299 hours in this matter for a total of $149,500, Mr. Jones spent 369.8 hours for a total of $184,900, Mr. Childress spent 317.5 hours for a total of $92,250, Ms. McDaniel spent 13.3 hours for a total of $1,330, and Ms. Stepowski spent 31.5 hours for a total of $3,150. *Id.*

Plaintiff also claims that he is entitled to have his costs reimbursed, which include payments for transcripts, filing fees, and poster boards used at trial. *Id.* at PageID.5274. In addition, Plaintiff requests post-judgment interest on his attorney fees. *Id.* at PageID.5274–79.[3]

Defendant objected to Plaintiff's claim for attorney fees on the basis that (1) the hourly rates are not reasonable, (2) Plaintiff failed to delineate between the time spent on Plaintiff's claim and Bryant Brown's claim, (3) Plaintiff failed to contemporaneously record time, (4) the requested fees should be reduced for the time Mr. Jones spent familiarizing himself with the case, and (5) Plaintiff had minimal success in the case. *See* ECF No. 104.

---

[3] Plaintiff also requested prejudgment and post-judgment interest on his damages. *See* ECF No. 101, PageID.5274–79. However, Plaintiff later filed a Satisfaction of Judgment indicating that Defendant had fully satisfied the money judgment, including all prejudgment and post-judgment interest that had accrued. *See* ECF No. 110. Plaintiff's request for prejudgment and post-judgment interest on his damages is therefore MOOT.

### a. Legal Standard for Awarding Attorney Fees

"Attorneys' fees are not awarded in federal civil actions except where a federal statute or court rule departs from the American Rule that litigants in most circumstances must bear their own costs." *Cmtys. for Equity v. Mich. High Sch. Athletic Ass'n*, No. 1:98-CV-479, 2008 WL 906031, at *3 (W.D. Mich. Mar. 31, 2008) (quoting *Bus. Guides, Inc. v. Chromatic Commc'ns Enters., Inc.*, 498 U.S. 533, 565 (1991)) (quotation marks omitted). Under Title VII, a court is empowered to award a prevailing party a "reasonable attorney's fee (including expert fees) as part of the costs" of the action. 42 U.S.C. § 2000e-5(k). The statute gives courts discretion whether to award attorney fees, but a prevailing plaintiff should ordinarily recover them "unless special circumstances would render such an award unjust." *Cleveland v. Ibrahim*, 121 Fed. App'x 88, 90 (6th Cir. 2005) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983)).

"The primary concern in an attorney fee case is that the fee awarded be reasonable." *Reed v. Rhodes*, 179 F.3d 453, 471 (6th Cir. 1999). "The trial court's initial point of departure, when calculating reasonable attorney fees, is the determination of the fee applicant's 'lodestar,' which is the proven number of hours reasonably expended on the case by an attorney, multiplied by a reasonable hourly rate." *Isabel v. City of Memphis*, 404 F.3d 404, 415 (6th Cir. 2005) (citing *Hensley*, 431 U.S. at 433). An hourly rate is reasonable where it is "sufficient to encourage

competent lawyers in the relevant community to undertake legal representation." *Lamar Advert. Co. v. Charter Twp. of Van Buren*, 178 Fed. App'x 498, 501 (6th Cir. 2006). Such a rate should "avoid[] producing a windfall for lawyers." *Adcock-Ladd v. Sec'y of Treasury*, 227 F.3d 343, 349 (6th Cir. 2000). Furthermore, hours are reasonably expended where they are not "excessive, redundant, or otherwise unnecessary[.]" *Hensley*, 461 U.S. at 434.

"Generally, a 'strong presumption' favors the prevailing lawyer's entitlement to his lodestar fee." *Adcock-Ladd*, 227 F.3d at 350. Nevertheless, after conducting the lodestar calculation, a court can "adjust the award based on litigation-specific considerations." *Freed v. Thomas*, 137 F.4th 552, 562 (6th Cir. 2025). After calculating the lodestar, courts in the Sixth Circuit consider the *Johnson* factors to determine if an adjustment is necessary. *Freed*, 137 F.4th at 562. Those factors are:

> (1) the time and labor required by a given case; (2) the novelty and difficulty of the questions presented; (3) the skill needed to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Reed*, 179 F.3d at 471 n.3 (citing *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974)). The Supreme Court has stated that "the most critical factor is the degree of success obtained." *Hensley*, 461 U.S. at 436.

8

**b. Mr. Hurwitz's and Mr. Childress's Rates Are Reasonable, But Mr. Jones' Rate is Unreasonable and Shall Be Reduced to $400 Per Hour**

In response to Plaintiff's motion, Defendant argues that Plaintiff's purported fees are unreasonable. Defendant cites the State Bar of Michigan's 2023 Economics of Law Survey ("Survey") which provides insight on prevailing legal market rates. ECF No. 104, PageID.5476. Defendant indicates that Mr. Hurwitz and Mr. Jones' requested rates are "well above even the 75% percentile of plaintiff-side employment lawyers in Wayne County" and that Mr. Childress's requested rate "likewise exceeds the median hourly rate for attorneys of his level of experience." *Id.* at PageID.5476–77. As such, Defendant requests a reduction in fees for all attorneys on the case that reflects the "midpoint" between the median rates for plaintiff-side employment attorneys with their levels of experience in Wayne County: $350 per hour for Mr. Hurwitz, $320 per hour for Mr. Jones, and $290 per hour for Mr. Childress. *Id.* at PageID.5477.

In reply, Plaintiff argues that the requested rates are reasonable, even though they are in the upper percentiles for plaintiff-side employment lawyers, given that Mr. Jones and Mr. Hurwitz are "exceptionally qualified trial counsel." ECF No. 106, PageID.5677. Plaintiff also notes that as to Mr. Childress, a rate of $300 per hour is only in the 25th percentile of plaintiff-side employment lawyers. *Id.* at PageID.5678.

i. <u>Mr. Hurwitz</u>

The Sixth Circuit has indicated that the prevailing market rate for an attorney of like experience and skill is "a useful guideline for determining a reasonable hourly rate." *Freed*, 137 F.4th at 561. Michigan federal courts routinely use the Survey to determine the prevailing market rate. *Bell v. Prefix, Inc.*, 784 F. Supp. 2d 778, 783 (E.D. Mich. 2011).

Of the various market rate tables in the Survey's most recent issue (2023), Defendant directs the Court's attention to three: hourly billing rates by county (Table 8), hourly billing rates by field of practice (Table 7), and hourly billing rates by years in practice (Table 4). *See* ECF No.104-4.

- For attorneys that practice in Wayne County, the median hourly billing rate is $330, the mean is $357, the 25th percentile is $250, the 75th percentile is $425, and the 95th percentile is $650. *Id.* at PageID.5512.

- For attorneys that practice plaintiff-side employment law, the median hourly billing rate is $400, the mean is $412, the 25th percentile is $300, the 75th percentile is $475, and the 95th percentile is $650. *Id.* at PageID.5509.

- Mr. Hurwitz has been in practice for 15 years. ECF No. 104-5, PageID.5523. For attorneys that have been in practice for 11–15 years, the median is $305, the mean is $330, the 25th percentile is $250, the

75th percentile is $395, and the 95th percentile is $575. ECF No. 104-4, PageID.5507.

Defendant argues that Mr. Hurwitz's rate should be reduced to the "midpoint" of each relevant median value. ECF No. 104, PageID.5477 ($350 per hour). However, the Sixth Circuit has never required that courts only award the average of the prevailing market rate values, or the median of those values, that may apply to a particular attorney. Rather, the prevailing market rate is merely a "*useful guideline* for determining a reasonable hourly rate." *Freed*, 137 F.4th at 561 (emphasis added); *see also Knop v. Johnson*, 712 F. Supp. 571, 582–83 (E.D. Mich. 1989) (stating that courts have no duty to "slavishly adhere" to the prevailing median market rates). The Court may also consider "a party's submissions, awards in analogous cases… and its own knowledge and experience in handling similar fee requests." *Waldo v. Consumers Energy Co.*, 726 F.3d 802, 821–22 (6th Cir. 2013). Moreover, the Court can consider the rate that attorneys of reasonably comparable skill, experience, and reputation could bill in the relevant community. *Fuhr v. Sch. Dist. of City of Hazel Park*, 364 F.3d 753, 762 (6th Cir. 2004).

Given these other considerations, the Court is satisfied that $500 per hour for Mr. Hurwitz is a reasonable hourly rate for his services. As an initial matter, Mr. Hurwitz has "litigated over 500 employment law-related lawsuits in federal court" in his career, owns his own firm, was a partner in Dykema Gossett PLLC's Labor

11

and Employment Group, and was Senior Counsel for Employment Law at a Fortune 500 company. ECF No. 101-2, PageID.5326. Mr. Hurwitz has also received many accolades, particularly being named a Rising Star or Super Lawyer every year since 2012. *Id.*

Mr. Hurwitz's acute specialization in employment law is important to the Court's analysis. "From the pleading stage, through discovery, motions, and trial, employment law is a specialized area of law that can quickly become a minefield to a non-specialist." *Ways v. Miami Univ. of Ohio*, 604 Fed. App'x 445, 448 n.4 (6th Cir. 2015); *see also Madden v. Chattanooga City Wide Servs. Dep't*, No. 1:06-cv-213, 2009 WL 10710408, at *3 (E.D. Tenn. Jan. 29, 2009) ("Employment law is a narrow area of the law which requires specialized knowledge and skill."). Considering the hundreds of employment law cases Mr. Hurwitz has litigated and his success in establishing his own plaintiff-side employment law firm, it cannot be doubted that Mr. Hurwitz is "highly skilled in the practice of employment law, an area which requires specialized knowledge in order to be successful." *Hunter v. City of Copper Hill, Tenn.*, No. 1:09-cv-238, 2013 WL 5278673, at *5 (E.D. Tenn. Sept. 19, 2013).

In analyzing the prevailing market rates as indicated in the Survey, the Court gives the most weight to the prevailing market rate for plaintiff-side employment attorneys. Title VII was created "for the specific purpose of eliminating

discrimination in the workplace." *Schocker v. Guardian Alarm Co. of Mich.*, No. 07-15059, 2008 WL 4449593, at *2 (E.D. Mich. Oct. 2, 2008). Thus, the reasonable hourly rate should be sufficient to "attract competent counsel" who practice in the field of employment law. *Blum v. Stenson*, 465 U.S. 886, 897 (1984). Considering Mr. Hurwitz's specialized experience, the Court is convinced that Mr. Hurwitz's requested rate of $500—which is slightly above the 75th percentile of hourly rates for plaintiff-side employment attorneys ($475)—is reasonable here. *See Force v. Ameritech Corp., Inc.*, No. 03-71618, 2007 WL 1760909, at *4 (E.D. Mich. June 15, 2007) ("Given Mr. Liss's number of years in practice (13), demonstrated skill and quality of his work in this case, it would be fair to place him in the 75th percentile range.").

The $500 per hour figure is also supported by the fact that Mr. Hurwitz was making $450 per hour when he worked at Dykema Gossett, so $500 now—when he manages his own firm—is reasonable. ECF No. 101-2, PageID.5326; *see Dowling v. Litton Loan Servicing LP*, 320 Fed. App'x 442, 447 (6th Cir. 2009) (stating that courts may consider an attorney's customary billing rate as evidence of prevailing market rate). The Court also notes that while some rates in the Survey may detract from the reasonableness of Mr. Hurwitz's rate, others support it. For example, the Survey provides the hourly billing rate by practice classification. *See* ECF No. 104-

4, PageID.5506. The 75th percentile for an equity partner—such as Mr. Hurwitz, who owns his own firm—is exactly $500. *Id.*; *see also* ECF No. 101-2, PageID.5326.

Furthermore, case law supports a $500 fee award here. In *Miller v. Suburban Mobility Authority for Regional Transport*, the Court awarded the lead attorney $600 per hour in a Title VII employment discrimination case, which was nearly the 95th percentile for employment attorneys. No. 20-11122, 2024 WL 2821975, at *3 (E.D. Mich. May 9, 2024), *aff'd*, No. 24-1478/1503, 2025 WL 1506082 (6th Cir. May 27, 2025). In *Sevy v. Barach*, the Court awarded the lead attorney in a § 1983 excessive force case $500 per hour given that he "has practiced for 14 years," "heads a small firm," and "has experience with civil rights cases." No. 17-13789, 2022 WL 4234951, at *4 (E.D. Mich. Sept. 14, 2022). In *Kelmendi v. Detroit Board of Education*, the Court awarded the lead attorney between the 75th and 95th percentile for plaintiff-side employment attorneys given the "skill that he demonstrated at trial, the result he obtained, and his proven experience in employment discrimination matters." No. 12-14949, 2017 WL 1502626, at *19 (E.D. Mich. Apr. 27, 2017).

In addition to Defendant's argument based on the Survey, Defendant also included an affidavit from Mr. Steven Ribiat, an attorney who has been practicing in business litigation since 1991, who declared under oath that based on his practice, experience, and the prevailing rates in the Survey, that Mr. Hurwitz's proposed rate is excessive. *See* ECF No. 104-5.

The Court considered the affidavit of Mr. Ribiat submitted by Defendant, but ultimately concludes that Mr. Ribiat did not sufficiently credit Mr. Hurwitz's skill and experience in employment law when crafting his opinion about Mr. Hurwitz's reasonable rate. Mr. Ribiat focused on the fact that Mr. Hurwitz established his plaintiff-side employment firm only four years ago, but Mr. Ribiat did not sufficiently credit Mr. Hurwitz for his many years of experience practicing employment law in general. *See Cmtys. for Equity*, 2008 WL 906031, at *10 (rejecting the affiant's opinion about the reasonable hourly rate for the plaintiff's attorney where her "suggested rate is too low based on the Court's knowledge of the current market."). Moreover, although the Court acknowledges Mr. Ribiat's impressive credentials, Mr. Ribiat's affidavit does not explain why he has any special expertise about attorney fees in employment law or civil rights cases specifically. *See Dobina v. Carruthers*, No. 5:09cv2426, 2010 WL 1796345, at *3 (N.D. Ohio May 3, 2010) (stating that the attorney affiant did not "indicate any reason from which this Court might surmise their expertise as to the reasonable market rate of a consumer law attorney in Ohio.").

Considering the foregoing, along with the Court's own knowledge and experience, the Court concludes that Mr. Hurwitz's skill, experience, and effort entitle him to slightly above the 75th percentile for plaintiff-side employment attorneys in Michigan, at $500 per hour.

15

ii.   Mr. Childress

The same tables in the Survey apply to Mr. Childress, with one exception. In contrast to Mr. Hurwitz, Mr. Childress has only been in practice for four years. ECF No. 101, PageID.5270. For a plaintiff-side employment lawyer who has 3–5 years of experience, the median hourly billing rate is $275, the mean is $300, the 25th percentile is $228, the 75th percentile is $340, and the 95th percentile is $530. ECF No. 104-4, PageID.5507. Defendant argues that Mr. Childress's rate should be reduced to $290 per hour, which is the midpoint between the relevant median values in the Survey. ECF No. 104, PageID.5477.

However, the Court concludes that $300 per hour is reasonable for Mr. Childress's services. $300 per hour is in the mere 25th percentile of hourly rates for plaintiff-side employment attorneys. ECF No. 104-4, PageID.5509.  Furthermore, regardless of legal field, $300 per hour is the average hourly rate for attorneys with Mr. Childress's years of experience. *Id.* at PageID.5507. The Court has had no reason to question Mr. Childress's hard work in this case and has been generally satisfied with the quality of his legal briefings. Courts have awarded the 25th percentile of hourly rates for a particular legal field when attorneys have underperformed. *See Betancourt v. Indian Hills Plaza LLC*, 659 F. Supp. 3d 817, 823 (E.D. Mich. 2023) (awarding a public-benefits attorney the 25th percentile of the hourly rate for such attorneys where the attorney's time was "less than

16

productive" and he "demonstrated less than desirable quality and legal acumen."). Such is not the case here. Mr. Childress was a vigorous advocate throughout the litigation.

Courts in this Circuit have awarded $300 per hour to associate attorneys involved in civil litigation. *See Toben v. Red House Med. Billing MI LLC*, No. 21-12293, 2022 WL 3701444, at *4 (E.D. Mich. Aug. 26, 2022) (awarding associates in an employment case $350 per hour); *Lowe v. Calsonickansei N. Am., Inc.*, No. 1:18-cv-00027, 2022 WL 1680653, *2 (M.D. Tenn. May 25, 2022) (awarding associate attorneys in an Americans with Disabilities Act case $300 per hour); *McPherson v. Suburban Ann Arbor, LLC*, No. 20-13152, 2024 WL 3625139, at *4 (E.D. Mich. July 31, 2024) (awarding an associate attorney $300 per hour, which was the median rate for consumer law practitioners).

The Court rejects Mr. Ribiat's affidavit, which advocates for $290 per hour for Mr. Childress, for the same reasons already explained.

Considering the foregoing, along with the Court's own knowledge and experience, the Court concludes that Mr. Childress's skill, experience, and effort entitle him to the 25th percentile for plaintiff-side employment attorneys in Michigan, at $300 per hour.

### iii.    Mr. Jones

The same tables in the Survey apply to Mr. Jones, with one exception. Mr. Jones has been in practice for seven years. ECF No. 101-3, PageID.5332. For an attorney that has been in practice for 6–10 years, the median hourly billing rate is $300, the mean is $322, the 25th percentile is $250, the 75th percentile is $385, and the 95th percentile is $585. Defendant argues that Mr. Jones's rate should be reduced to $320 per hour, which is the midpoint between the relevant median values in the Survey. ECF No. 104, PageID.5477.

The Court agrees that $500 per hour is excessive for Mr. Jones. Unlike Mr. Hurwitz, who is a partner that has been in practice for over twice as long as Mr. Jones, Mr. Jones has only seven years of experience and is at the associate level. ECF No. 101-3, PageID.5332. The Court based much of its opinion regarding the appropriateness of $500 per hour for Mr. Hurwitz—the 75th percentile range for employment attorneys—on his extensive, specialized experience in employment law. Mr. Jones lacks that experience yet asks for the same hourly fee.

Therefore, the Court errs to the median hourly billing rate for plaintiff-side employment attorneys, which is $400 per hour. ECF No. 104-4, PageID.5509; *see Esshaki v. Whitmer*, No. 2:20-CV-10831-TGB, 2021 WL 1192915, at *5 (E.D. Mich. Mar. 30, 2021) ("[A]bsent any specific justification as to why Counsel merits the 75th percentile fee, the Court will use median figures instead."). That said, Mr.

Jones tried the case himself and has achieved success in his relatively short career, such as being recognized in Michigan Lawyers Weekly's Go-To Lawyer Power List, as Michigan's Go-To Lawyer for Negligence, and in the National Trial Lawyers Top 100 Civil Plaintiff Attorneys. ECF No. 101-3, PageID.5332–33. Notably, the $400 median rate for plaintiff-side employment lawyers is still significantly higher than other relevant median values for Mr. Jones: $230 for associates, $300 for those with 6–10 years of experience, and $330 for those practicing in Wayne County. ECF No. 104-4, PageID.5506–12. The Court finds that the $400 fee, being higher than these other relevant values but the median for plaintiff-side employment attorneys, fairly compensates Mr. Jones for his skill, experience, and efforts in this case. *See Waldo*, 726 F.3d at 822 (affirming a rate of $400 per hour for the lead attorney in a Title VII action); *Peterson v. West TN Expediting, Inc.*, No. 1:18-cv-01164-STA-jay, 2020 WL 3490076, at *2 (W.D. Tenn. June 26, 2020) (finding $400 per hour a reasonable rate in a Title VII action given that counsel prepared for and examined all witnesses without co-counsel during trial and achieved excellent results).

The Court rejects Mr. Ribiat's affidavit, which advocates for $320 per hour for Mr. Jones, for the same reasons already explained.

Considering the foregoing, along with the Court's own knowledge and experience, the Court concludes that Mr. Jones's skill, experience, and effort entitle

him to the median hourly rate for plaintiff-side employment attorneys in Michigan, at $400 per hour.

### c.  Plaintiff's Claims and Brown's Claims Were Factually Interrelated And Brown Was A Witness At Trial, So The Court Will Not Lower The Fee Award

Defendant's next argument is that Plaintiff's attorney fees should be reduced by 50% for the time expended prior to Brown's dismissal from the case, given that Brown's claims were settled and released. ECF No. 104, PageID.5477–78. Plaintiff's counsel did not delineate the time spent on Plaintiff's claims specifically and Brown's claims specifically, so Defendant argues that awarding Plaintiff fees for time that might have been expended on Brown's claims would be a windfall. *Id.* In reply, Plaintiff argues that Brown's settlement does not alter the amount of fees Plaintiff is entitled to in this situation, given that Brown's claims were intertwined with Plaintiff's. Plaintiff notes that regardless of Brown's presence as a litigant in the case, he would have needed to serve the same discovery, taken the same depositions, and filed the same motions. ECF No. 106, PageID.5680.

In *Hensley*, the Supreme Court noted that in many civil rights cases, "the plaintiff's claims for relief will involve a common core of facts or will be based on related legal theories. Much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis." 461 U.S. at 435.

Although the Supreme Court was discussing a single plaintiff bringing multiple claims, the same principle extends to this case. Plaintiff and Brown were employees at the same business, working in the same department, and were fired for the same reasons. In essence, their litigation was a single litigation based on a common core of facts. As a result, the discovery, motion practice, and general litigation that occurred in the case was the same for both parties. Moreover, the effort expended on Brown's case was ultimately utilized at Plaintiff's trial because Brown was a witness. The Court has reviewed counsel's time entries prior to Brown's dismissal and could not find one that was not for the benefit of Plaintiff's case. Accordingly, the Court will not reduce Plaintiff's award on this basis.

### d. The Court Will Reduce Plaintiff's Fees by The Discrepancies Between His First Application for Attorney Fees and His Current Application for Attorney Fees

Defendant's next argument is that the Court should reduce Plaintiff's requested fees by 30% because of Plaintiff's counsel's failure to keep contemporaneous time records. ECF No. 104, PageID.5478. Defendant points out that in the attorneys' affidavits, each attorney stated that they prepared the Statement of Attorney Fees using information from Microsoft Outlook and by reviewing their personal text messages and call history, not by keeping contemporaneous time records. *Id.* at PageID.5479. As evidence of the lack of contemporaneous timekeeping, Defendant points out various inconsistencies between the current

21

Statement of Attorney Fees and a previous Statement of Attorney Fees that Plaintiff submitted to the Court when seeking fees arising from a discovery dispute. *Id.* at PageID.5479–80; *see* ECF No. 104-7 (table provided by Defendant exemplifying each discrepancy between the two fee requests). There are a total of twenty discrepancies, with seven by Mr. Hurwitz and thirteen by Mr. Childress. ECF No. 104-7.

In reply, Plaintiff assures the Court that the attorneys kept contemporaneous time records in addition to reviewing Microsoft Outlook and cell phone history to prepare the current Statement of Attorney Fees. ECF No. 106, PageID.5679. However, Plaintiff did not attempt to address the timekeeping discrepancies that Defendant pointed out between his two fee requests, and instead chose to attack Defendant's counsel for being "renowned for over-billing swaths of time to international corporations[.]" *Id.*[4]

"Failure to keep contemporaneous time records is a sufficient reason for a reduction" in attorney fees. *Jones v. Ill. Cent. R.R. Co.*, No. 07-2073 D/P, 2011 WL 3862330, at *3 (W.D. Tenn. Aug. 14, 2011). The Court accepts Plaintiff's statement

---

[4] There is no evidence to support this contention, nor is it relevant to the task at hand. The Court finds this language "inflammatory, unprofessional and unwarranted. There is a line between vigorous representation and *ad hominem* insults addressed to opposing counsel, and [Plaintiff is] in danger of crossing it here." *Valhalla Inv. Props., LLC v. 502, LLC*, No. 3:19-cv-00318, 2021 WL 1174593, at *1 (M.D. Tenn. Mar. 29, 2021) (cleaned up).

that the attorneys kept contemporaneous time records and merely reviewed their Microsoft Outlook accounts and cell phone history as a second layer of certainty about their hours. However, Plaintiff failed to explain the discrepancies between his first Statement of Attorney Fees and his current Statement of Attorney Fees. It is the fee applicant's "burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Hensley*, 461 U.S. at 437. Given Plaintiff's failure to address the evidence of time discrepancies, the Court will reduce Mr. Hurwitz's and Mr. Childress's time entries to the lower values represented in their two Statements of Attorney Fees. The Court finds this a fair result given the demonstrated untrustworthiness of Plaintiff's values for these entries and the fact that it is Plaintiff's burden to keep time accurately.

For Mr. Hurwitz, the fees will be reduced as follows:

| Date | Previous Statement of Attorney Fees | Hours Claimed | Current Statement of Attorney Fees | Hours Claimed | Hours Awarded |
|---|---|---|---|---|---|
| 6/1/2024 | Discussion with Attorney Brendan J. Childress about deposition schedule. | 0.1 | Discussion with Attorney Brendan J. Childress about deposition schedule. | 0.5 | **0.1** |
| 6/24/2024 | Discussion with Plaintiffs regarding Defendant's supplemental discovery responses. | 0.4 | *No corresponding entry* | 0 | **0** |
| 7/3/2024 | Email from Defendant's counsel regarding deposition availability. | 0.1 | Email from Defendant's counsel regarding deposition schedule. | 0.2 | **0.1** |
| 7/3/2024 | Email to Defendant's counsel regarding deposition availability. | 0.2 | *No corresponding entry* | 0 | **0** |
| 7/21/2024 | Review and revise draft of Motion for Default Judgment or, in the alternative, Motion to Strike Defendant's Undue | 1.5 | Review and revise draft of Motion for Default Judgment or, in the Alternative, Motion to Strike Defendant's | 2.5 | **1.5** |

| Date | | Hours Claimed | | Hours Claimed | Hours Awarded |
|---|---|---|---|---|---|
| | Hardship Defense and Attorney's Fees | | Undue Hardship Defense and Attorney's Fees | | |
| 8/6/2024 | Review and Analysis of Defendant's response to Plaintiff's motion for Default Judgment or, in the alternative, Motion to Strike Defendant's Undue Hardship Defense and Attorney's Fees | 0.3 | *No corresponding entry* | 0 | **0** |
| 9/30/2024 | Review and analysis of Court's Order Denying in Part and Granting in Part Plaintiffs' Motion for Default Judgment or, in the alternative, Motion to Strike Defendant's Undue Hardship Defense and Attorney's Fees | 0.4 | Review and Analysis of Court's Order Denying in Part Motion for Default Judgment or, in the Alternative, Motion to Strike Defendant's undue Hardship Defense and Attorney's Fees | 0.5 | **0.4** |
| **Totals:** | | 3 | | 3.7 | **2.1** |

For Mr. Childress, the fees will be reduced as follows:

| Date | Previous Statement of Attorney Fees | Hours Claimed | Current Statement of Attorney Fees | Hours Claimed | Hours Awarded |
|---|---|---|---|---|---|
| 1/26/2024 | Draft deficiency letter to Defendant | 2 | Draft deficiency letter to Defendant regarding deficient discovery responses | 4 | **2** |
| 4/10/2024 | Engage in Meet and Confer Call with Defendant's counsel | 0.5 | Engage in Meet and Confer call with Defendant's counsel | 0.4 | **0.4** |
| 5/22/2024 | Email to Defendant's counsel again inquiring when documents Defendant agreed to produce during meet and confer call would be produced | 0.1 | *No corresponding entry* | 0 | **0** |
| 5/31/2024 | Email to Defendant's counsel requesting supplemental documents by 6/14/2024 and Defendant's deposition availability | 0.2 | Email with Attorney Noah Hurwitz and Defendant's counsel regarding Defendant's supplemental document production | 0.1 | **0.1** |
| 6/3/2024 | Email to Defendant's counsel regarding deposition availability and Defendant's supplementation | 0.1 | *No corresponding entry* | 0 | **0** |
| 7/12/2024 | Deposition of Dana Howell | 1.7 | Conduct Deposition of Dana Howell | 2.5 | **1.7** |
| 7/15/2024 | Review and Analysis of Defendant's | 0.3 | Review and Analysis of Defendant's | 0.4 | **0.3** |

24

| | supplemental discovery production | | supplemental document production | | |
|---|---|---|---|---|---|
| 7/21/2024 | Draft Motion for Default Judgment or, in the Alternative, Motion to Strike Defendant's Undue Hardship Defense and Award Attorney's Fees | 5.5 | Draft Motion for Default Judgment or, in the alternative, Motion to Strike Defendant's Undue Hardship Defense and Award Attorney's Fees | 7.5 | **5.5** |
| 7/21/2024 | *No corresponding entry* | 0 | Legal Research for Plaintiff's Default Motion or, in the Alternative, Motion to Strike Defendant's Undue Hardship Defense and Award Attorney Fees | 2 | **0** |
| 7/26/2024 | Review and Analysis of Defendant's supplemental discovery production | 0.5 | *No corresponding entry* | 0 | **0** |
| 8/6/2024 | Review and Analysis of Defendant's Response to Plaintiff's Motion for Default Judgment or, in the Alternative, Motion to Strike Defendant's Undue Hardship Defense and Award Attorney's Fees | 0.5 | Review and Analysis of Defendant's Response to Plaintiff's Motion for Default Judgment or, in the Alternative, Motion to Strike Defendant's Undue Hardship Defense and Award Attorney's Fees | 1 | **0.5** |
| 8/7/2024 | *No corresponding entry* | 0 | Draft Reply in Support of Plaintiff's Motion Default Judgment or, in the Alternative, Motion to Strike Defendant's Undue Hardship Defense and Award Attorney's Fees | 1.5 | **0** |
| 8/9/2024 | Draft Reply in Support of Plaintiff's Motion for Default Judgment or, in the Alternative, Motion to Strike Defendant's Undue Hardship Defense and Award Attorney's Fees | 1.5 | *No corresponding entry* | 0 | **0** |
| **Totals:** | | 12.9 | | 19.4 | **10.5** |

### e. The Court Will Not Reduce Plaintiff's Fees for Mr. Jones's Time Reviewing the Case

Defendant's next argument is that the Court should strike the 70.9 hours Mr. Jones spent familiarizing himself with the case prior to trial, asserting that "[c]ourts in the Sixth Circuit have held that, where a case is tried by a different attorney than the attorney who took the case through summary judgment, it would be unreasonable for the plaintiff to recover all of the additional time the new attorney spent getting ready for trial." ECF No. 104, PageID.5481 (citing *Kelmendi*, 2017 WL 1502626, at *24). Plaintiff argues that any attorney must spend significant time reviewing a case before trial, whether that attorney took the case through summary judgment or not. ECF No. 106, PageID.5681.

The Court agrees with Plaintiff. It is in the nature of litigation that documents and research reviewed earlier in the case must be reviewed again prior to trial. "All of this is duplication, of course, but it's *necessary* duplication; it is inherent in the process of litigating over time." *Monroe v. Jackson-Madison Cnty. Sch. Sys. Bd. of Educ.*, No. C.A. 72-1327, 2010 WL 3732014, at *4 (W.D. Tenn. Sept. 23, 2010) (quoting *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008)). Mr. Jones billed a lot of hours in a short period of time, but that is because Mr. Jones was brought in as lead trial counsel only about a month before trial. Naturally, he had to bill a lot of hours in a short period of time to prepare. *See Marshall v. Rawlings Co., LLC*, No. 3:14-CV-359-TBR, 2018 WL 3028574, at *10 (W.D. Ky. June 18, 2018)

(awarding attorney fees for the time a new attorney spent getting "up to speed" on the case, noting that she only had weeks to prepare for trial and her hours spent preparing were "entirely reasonable.").

Moreover, Defendant had three attorneys working on its case, so it was reasonable for Plaintiff to add another attorney to his team—for a total of three attorneys—prior to trial. *See Crawford v. Metro. Gov. of Nashville and Davidson Cnty., Tenn.*, No. 3:03-0996, 2010 WL 11610314, at *5 (M.D. Tenn. Apr. 9, 2010) (holding that a new attorney's hours familiarizing himself with the case before trial were compensable, noting that "[i]t was not unreasonable for the Plaintiff to have a second attorney at a jury trial… [given that] the Defendant was represented by at least two attorneys throughout the trial."); *Kidis v. Moran*, No. 16-13070, 2019 WL 3241557, at *3 (E.D. Mich. Apr. 16, 2019) (stating that "even if some of [the attorney's] time was spent getting up to speed on the case, it was still a reasonable and economic distribution of work."). Thus, the Court will not reduce Plaintiff's attorney fees on this basis.

### f. The Court Will Not Reduce Plaintiff's Fees for Lack of Success

Defendant argues that Plaintiff's attorney fees should be reduced because of his limited success. ECF No.104, PageID.5483. Namely, the Court dismissed two of Plaintiff's claims on summary judgment, Plaintiff only received 1.7% of the damages he requested ($133,000 out of a requested $7,533,000), and Plaintiff

refused a more favorable settlement offer prior to trial ($150,000). *Id.* at PageID.5484. Defendant requests that the Court either strike all the fees incurred after the date of Defendant's settlement offer or apply an across-the-board reduction of 50% after the application of Defendant's previously requested reductions. *Id.* at PageID.5485.

Plaintiff argues that his dismissed claims were related to his prevailing claim, so the fact that those claims were dismissed does not affect his success in the case as a whole. ECF No. 106, PageID.5682. Plaintiff also contends that he was successful overall because the jury verdict was higher than Defendant's offer of judgment and because he convinced a "seemingly pro-vaccination jury that laws had been violated." *Id.*

"[T]he most critical factor" in determining the reasonableness of attorney fees "is the degree of success obtained." *Hensley*, 461 U.S. at 436. If "a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount." *Id.* "[T]he amount of damages awarded as compared to the amount sought in a damages claim is one way to think about the degree of success." *McKelvey v. Sec'y of U.S. Army*, 768 F.3d 491, 495 (6th Cir. 2014) (quoting *Farrar v. Hobby*, 506 U.S. 103, 114 (1992)) (quotation marks omitted). Similarly, "[f]ew, if any, reasonable litigants would call a monetary judgment that comes in well under the

money offered to settle the case a success." *Id.* However, as the Sixth Circuit noted

in *McKelvey*:

> Just because a plaintiff ends up with less than what was offered during settlement negotiations does not mean fees should be reduced. The critical point is that this potential measure of lack of success is one factor among many that a district court may consider in exercising the discretion the statute gives it.

*Id.*

In addition, the Supreme Court has made clear that in many civil rights cases,

"the plaintiff's claims for relief will involve a common core of facts or will be based

on related legal theories." *Hensley*, 461 U.S. at 435. Thus, "a court should not

measure a plaintiff's success simply by using a ratio of successful claims to claims

raised." *Waldo*, 726 F.3d at 822.

Defendant raises salient points in its argument, but the Court ultimately

concludes that Plaintiff achieved a noteworthy level of success in this case, so the

Court will not reduce his damages for lack of success. Although two of Plaintiff's

claims were dismissed, these claims were undoubtedly factually and legally related

to Plaintiff's prevailing claim, so "counsel's time [in prosecuting the case was]

devoted generally to the litigation as a whole[.]" *Imwalle v. Reliance Med. Prods.,*

*Inc.*, 515 F.3d 531, 552 (6th Cir. 2008); *see also E.E.O.C. v. Abercrombie & Fitch*

*Stores, Inc.*, 575 U.S. 768, 771–72 (2015) (noting that failure to accommodate

religious belief and disparate treatment based on religious belief are the same causes

of action). Thus, the Court will not reduce Plaintiff's attorney fees merely because two of his related claims were dismissed at summary judgment. *Id.*

It is true that Plaintiff refused a more favorable settlement offer prior to trial. However, "[h]indsight has a way of making things look clearer at the point of decision—the time of declining to settle a case—than they may have been." *McKelvey*, 768 F.3d at 495. Defendant's first settlement offer was only $17,000 higher than the amount Plaintiff eventually recovered at trial, and Defendant's subsequent offer of judgment was a mere $3,000 less than the amount Plaintiff recovered at trial. This was not a case where Plaintiff refused settlement offers that were clearly better than anything he would likely receive at trial. Rather, this was a close case from the beginning, and Plaintiff's refusal of Defendant's offer in order to take his chances at trial is not so unreasonable as to warrant reducing the award.

Moreover, Plaintiff's monetary recovery, though less than he asked for, is far from a small amount. In *Bell v. Prefix, Inc.*, the plaintiff requested damages of $350,000 or $400,000, but the jury only awarded $14,563—about 3.6%–4% of the requested amount. 784 F. Supp. 2d at 782–83. Even so, the court refused to reduce the attorney fees under those circumstances, stating that "[a]lthough the jury awarded significantly less than requested, it does not change the nature of those damages from actual to nominal." *Id.* at 783. Here, even though Plaintiff did not receive the amount he asked for, he still received a substantial sum. Furthermore, the

Court emphasizes that this case was predicated on vindicating Plaintiff's civil rights. By achieving meaningful relief in this Title VII action, Plaintiff "corrected a violation of federal law and, in so doing, has vindicated Congress's statutory purposes." *Fox v. Vice*, 563 U.S. 826, 834 (2011). That also has value, and the Court considers it in addition to the damages Plaintiff was awarded in concluding that it will not reduce Plaintiff's attorney fees based on lack of success.

### g.  The *Johnson* Factors Do Not Support a Downward Adjustment

Plaintiff did not discuss the *Johnson* factors when making his argument for attorney fees. However, in its response, Defendant argued that an analysis of the *Johnson* factors supports making a downward adjustment to the fees in this case. ECF No. 104, PageID.5486.

Before the lodestar became "the guiding light" of attorney fee jurisprudence, *Murphy v. Smith*, 583 U.S. 220, 227 (2018), the Sixth Circuit used the *Johnson* factors to determine whether an award of attorney fees was reasonable. *Reed v. Rhodes*, 179 F.3d 453, 471 n.3 (6th Cir. 1999) (citing *Johnson*, 488 F.2d at 717–19). Now, the lodestar is considered the presumptively reasonable fee, and courts may not reduce attorney fees based on a factor that is already subsumed in the lodestar calculation. *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986). Indeed, the Supreme Court has indicated that modifications to the lodestar are "proper only in certain 'rare' and 'exceptional' cases[.]" *Id.*

Of *Johnson*'s twelve factors, Defendant alleges that five are relevant to the present case and favor a downward adjustment here: (1) the time and labor required, (2) the novelty and difficulty of the case, (3) preclusion of other employment due to acceptance of the case, (4) the customary fee and awards in similar cases, and (5) the amount involved and the results obtained. ECF No. 104, PageID.5486–90.

The Court already considered most of these issues when calculating Plaintiff's lodestar. The Court discussed the time and labor required as it pertains to Mr. Jones's hours familiarizing himself with the case. The Court addressed the complexity of the case, noting that employment law can be a "minefield" to a non-specialist. *Ways*, 604 Fed. App'x at 448 n.4. The Court considered fees awarded in similar cases for similar attorneys,[5] and the results obtained in this case. The only consideration the

---

[5] Defendant cites four cases and argues that they support a downward adjustment in the fee awarded here. *See* ECF No. 104, PageID.5488–89. In these cases, the court reduced attorney fees due to lack of success (among other reasons). Notably, the Court is not bound by any of these cases, and the Court has already explained why it will not reduce Plaintiff's award for lack of success. However, there is one case the Court will address. In *Miller*, which was a Title VII employment discrimination case before the undersigned, the Court adjusted the attorney fees based, in part, on the plaintiff's lack of success. *Miller*, 2024 WL 2821975, at *2. Notably, however, the Court still awarded the lead attorney on the case *$600 per hour*, which was nearly the 95th percentile hourly rate for that attorney. *Id.* at *3. Thus, despite the plaintiff's lack of success under similar circumstances, the Court still awarded the lead attorney more than what the Court is awarding Mr. Hurwitz now. This ruling was upheld by the Sixth Circuit. *Miller*, 2025 WL 1506082, at *9. The Court finds *Miller* consistent with the present case for this reason. Given the similar levels of success in both cases, the most experienced attorneys in both cases received similar hourly rates: $600 in for the attorney in *Miller* and $500 for Mr. Hurwitz in this case.

Court did not explicitly discuss was whether Plaintiff's counsel was precluded from other employment due to acceptance of the case. However, regardless of whether Plaintiff's counsel was so precluded or not, the Court finds that this factor is insufficient to overcome the strong presumption that the lodestar calculation is reasonable. *See Trs. of Bldg. Laborers Loc. 310 Pension Fund v. Able Contracting Grp., Inc.*, No. 06CV1925, 2009 WL 792472, at *6 (N.D. Ohio Mar. 23, 2009) (not making a downward adjustment where the attorney was not precluded from other work). Nor does the Court find that this fact, in and of itself, is enough to conclude that the attorneys' hourly rates must be reduced in the lodestar calculation.

### h.  The Hourly Rate for Ms. McDaniel and Ms. Stepowski Is Reasonable

Plaintiff requests $100 per hour for the work of the law clerk, Ms. McDaniel, and the paralegal, Ms. Stepowski. ECF No. 101, PageID.5271–72. Notably, Defendant did not address these requested fees in its response. The Court finds that $100 per hour is reasonable for the work performed by Ms. McDaniel and Ms. Stepowski. *See Miller*, 2024 WL 2821975, at *2 ("A reasonable hourly rate for the work of law clerks would be $100 per hour."); *Price v. Comm'r of Social Sec.*, No. 12-15209, 2015 WL 348600, at *3 (E.D. Mich. Jan. 23, 2015) ("[T]he Court concludes that Plaintiff is entitled to an hourly fee of $100.00 for all reasonable law clerk and paralegal work."); *Latifa & Halal Kitchen, LLC v. Harouf Corp.*, No. 2-23-CV-12779-TGB-EAS, 2025 WL 1106061, at *2 (E.D. Mich. Apr. 14, 2025)

33

("Courts find that paralegal rates around $100 per hour are reasonable." (citing cases)).

*****

Based on the foregoing, the Court awards as attorney fees the following amounts:

| Attorney | Lodestar Calculation | Lodestar |
|---|---|---|
| Mr. Hurwitz | 297.4 hours x $500 | $148,700 |
| Mr. Childress | 308.6 hours x $300 | $92,580 |
| Mr. Jones | 369.8 hours x $400 | $147,920 |
| Ms. McDaniel | 13.3 hours x $100 | $1,330 |
| Ms. Stepowski | 31.5 hours x $100 | $3,150 |
| **TOTAL:** | | **$393,680** |

## B. Costs

Plaintiff seeks $5,222.39 in costs as the prevailing party, which consists of court fees, court reporter fees for transcripts, and reimbursement for a poster board used at trial. ECF No. 103. Plaintiff's first Bill of Costs was partially rejected by the Clerk's Office because it failed to demonstrate how the deposition transcripts were utilized, and because a poster board is not taxed as costs. ECF No. 102, PageID.5440. Plaintiff then filed an Amended Bill of Costs which contained supporting citations demonstrating how the depositions were used at trial and still requesting reimbursement for the poster board. *See* ECF No. 103. In Defendant's response to

34

Plaintiff's Motion for Attorney Fees and Costs, it did not address Plaintiff's request for costs.

Federal Rule of Civil Procedure 54(d) "creates a presumption in favor of awarding costs, but allows denial of costs at the discretion of the trial court." *White & White, Inc. v. Am. Hosp. Supply Corp.*, 786 F.2d 728, 730 (6th Cir. 1986). A district court may only award costs for the categories of expenses contained in 28 U.S.C. § 1920, which states:

> A judge or clerk of any court of the United States may tax as costs the following:
> **(1)** Fees of the clerk and marshal;
> **(2)** Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
> **(3)** Fees and disbursements for printing and witnesses;
> **(4)** Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
> **(5)** Docket fees under section 1923 of this title;
> **(6)** Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

28 U.S.C. § 1920.

Notably, "the opposing party has the burden of showing that the costs requested fall outside the scope of 28 U.S.C. § 1920 or are otherwise unreasonable." *Miller*, 2024 WL 2821975, at *3; *see also Faith v. Warsame*, No. 3:18-CV-323-CRS, 2020 WL 981711, at *1 (W.D. Ky. Feb. 28, 2020) (citation omitted) (stating

that the "party objecting to the taxation bears the burden of persuading the Court that taxation is improper.").

The Court is satisfied that Plaintiff is entitled to the full $5,222.39 in costs. In Plaintiff's Amended Bill of Costs, he demonstrated how each deposition transcript was used either in support of motions, at trial, or both. ECF No. 103, PageID.5443–5445. Plaintiff described how the trial transcripts were used to support his Motion for Directed Verdict on Religion. *Id.* at PageID.5445. Thus, the Court finds that these transcripts were "necessarily obtained for use in the case[.]" 28 U.S.C. § 1920(2). The Court also finds that the poster board constitutes exemplification "necessarily obtained for use in the case." *See id.*(4); *see also Med. Mut. of Ohio v. Air Evac EMS, Inc.*, No. 1:16 CV 80, 2020 WL 13454002, at *7 (N.D. Ohio Sept. 1, 2020) (allowing taxation of costs for poster boards used at trial, stating that "[c]ourts in this Circuit routinely tax trial presentation costs of this nature as 'exemplification.'").

Therefore, Plaintiff's request for $5,222.39 in costs is GRANTED.

## C. Post-Judgment Interest on Attorney Fees

Plaintiff argues that he is entitled to post-judgment interest on attorney fees granted by the Court which will begin to accrue on the day the Court enters an order granting attorney fees. ECF No. 101, PageID.5278. Defendant did not contest this in its response.

28 U.S.C. § 1961(a) states that "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court." The Sixth Circuit has held that the term "money judgment" in § 1961 includes a judgment for attorney fees, and that post-judgment interest on attorney fees begins to accrue on the date that the Court enters such judgment. *Associated Gen. Contractors of Ohio, Inc. v. Drabik*, 250 F.3d 482, 494–95 (6th Cir. 2001). Interest must be calculated "at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding." 28 U.S.C. § 1961(a).

In this case, the Court has concluded that Plaintiff is entitled to attorney fees as of the date of this Order. Plaintiff is entitled to interest on those fees, which shall begin to accrue on the date of this Order at a rate of 4.09%, which is the weekly average 1-year constant maturity Treasury yield for the preceding calendar week.[6]

Therefore, Plaintiff's request for post-judgment interest on the award of attorney fees is GRANTED.

---

[6]*See* https://www.federalreserve.gov/datadownload/Preview.aspx?pi=400&rel=H15&preview=%20H15/H15/RIFLGFCY01_N.WF (week ending on June 20, 2025).

**D. Motions to Compel Defendant to Comply with Subpoena and to Compel Defendant to Respond to Request for Production**

In Plaintiff's Motion to Compel Defendant's Billing Records, Plaintiff requests the Court to compel Defendant to comply with his subpoena that requested Defendant's attorneys' billing records. ECF No. 105. Plaintiff argues that Defendant's billing records are relevant to the determination of the reasonableness of attorney fees in this case, given that Defendant objected to the reasonableness of the fees. *Id.* at PageID.5613. In Plaintiff's Motion to Compel Defendant's Responses to Plaintiff's Requests for Production, Plaintiff requests the Court to compel Defendant to respond to his request for production with its attorneys' billing records for the same reason. ECF No. 109, PageID.5971. Plaintiff seeks large swaths of information from Defendant and Jackson Lewis P.C. (the firm that represented Defendant), including personal work calendars of everyone who billed time on the case, billing records and time sheets, physical copies of bills and invoices, records and documentation supporting the billing rates, Defendant's attorneys' "entire file" related to the case, and any correspondence from Defendant about billing, payments, and invoices. ECF No. 107, PageID.5783–84; ECF No. 111, PageID.6052.

Defendant objected to subpoena for being procedurally improper, *id.* at PageID.5770–72, for seeking irrelevant information, *id.* at PageID.5772, and for opening the door to a second major litigation. *Id.* at PageID.5783. Defendant raised

similar objections to Plaintiff's request for production: that the request was procedurally improper, irrelevant, and opened the door to a second major litigation. *See* ECF No. 111. Moreover, Defendant simply listed the hourly rates of defense counsel in its response, stating that "to the extent Plaintiff argues that [defense counsel's] billing records will allow the Court to 'measure Plaintiff's Counsel's rates against Defense Counsel's rates,'… the Court can do so without the need for intrusive discovery[.]" ECF No. 107, PageID.5776.

### i.  The Court Will Not Order Defendant to Produce Its Billing Records or Any Related Information Because It Is Irrelevant and Futile

In the instant Order, the Court has largely granted Plaintiff's request for attorney fees. The only modifications the Court made to Plaintiff's fees were to reduce Mr. Jones's hourly rate to $400 and to adjust certain hours of Mr. Hurwitz and Mr. Childress due to their failure to accurately record time. The information Plaintiff seeks via his subpoena and request for production would have no effect on the Court's conclusion about these issues.

Although courts have found that defense counsel's billing records "could be relevant" to determining the reasonableness of plaintiff's counsel's rates and time expended, the relevancy of such records "depend[s] upon the type of objection raised by opposing counsel." *Almanza v. Barr*, No. 3:15-CV-389-TAV-HBG, 2019 WL 2062505, at *2 (E.D. Tenn. May 9, 2019) (citations omitted). Defense counsel's

39

billing records are plainly irrelevant to Defendant's objection about the accuracy of the time billed, and thus would make no difference to the Court's decision to reduce Plaintiff's fees to account for the inaccurate billing. *See Montgomery v. Kraft Foods Glob., Inc.*, No. 1:12-CV-00149, 2015 WL 881585, at \*3 (W.D. Mich. Mar. 2, 2015) (stating that defense billing records are irrelevant to objections about the accuracy of time billed).

Furthermore, although defense counsel's records *could* be relevant to determining the reasonableness of plaintiff's counsel's hourly rates, such records would be futile under these circumstances. No one on the defense counsel team has "similar experience" or "similar circumstances" to Mr. Jones, so their hourly rates are not an appropriate comparator to his. *See Montgomery*, 2015 WL 881585, at \*3. The only defense attorney who comes closest to being similar to Mr. Jones is Ms. Elyse Culberson, who has the same years of experience. *See* ECF No. 107, PageID.5776 n.6. However, Ms. Culberson did not try the case for Defendant like Mr. Jones did for Plaintiff. And Ms. Culberson's hourly rate—as stated by Defendant—is *less* than what the Court has awarded Mr. Jones. *See id.* at PageID.5776. Plaintiff's other requested information, such as personal work calendars and Jackson Lewis P.C.'s "entire file" on the case, has no bearing whatsoever on this analysis.

In sum, nothing in defense counsel's billing records could possibly convince the Court to rule in a way other than it did in this Order. The Court declines to compel Defendant to produce any of the information that Plaintiff has requested. Therefore, Plaintiff's Motions to Compel are DENIED.

### IV.   CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Attorney Fees and Costs [ECF No. 101] is **GRANTED IN PART.** Plaintiff is awarded a total of **$393,680 in attorney fees, plus interest accruing from the date of this Order at the rate of 4.09%.** Costs are taxed to the Defendant in the amount of **$5,222.39.**

Plaintiff's Motion to Compel Defendant's Billing Records [ECF No. 105] and Motion to Compel Defendant's Responses [ECF No. 109] are **DENIED**.

**SO ORDERED.**

Dated:  June 25, 2025                                      /s/Gershwin A. Drain
                                                          GERSHWIN A. DRAIN
                                                          United States District Judge